CHARLES PICKSLAY, Respondent, v. THEODORE B. STARR, Appellant.

1. GIFT. A perfect gift is constituted by the existence of the intention to give, followed by a delivery of the thing given.

2. INTENTION. All that is necessary to constitute intention is the design or determination of the mind, and that mental condition may exist when an act is done, irrespective of the fact that, were something else then recalled, the mind might not have acted in the same manner.

3. GIFT NOT REVOCABLE FOR MISTAKE. When a gift has been consummated by delivery of its subject, by the voluntary act of the donor with the intention of making a gift, it cannot be revoked on the ground that it was made by mistake through the donor's forgetfulness of a fact at the time of making the gift.

4. MASTER AND SERVANT — GIFT OF MONEY IN ADDITION TO SALARY. If an employer voluntarily delivers to his employee money, under circumstances and with expressions showing that he intends it as a gift in addition to salary, and maintains silence as to any different intention for such a period as to justify the employee in treating the money as a gift, he cannot thereafter compel the employee to apply the money as a payment on account of salary, on the ground that it was given under a mistake arising from the employer's having forgotten at the time that the employee's salary had been raised.

5. DELIVERY OF GIFT BY BANK CHECK. The delivery by the donor of his check upon a bank, payable to the donee, is sufficient to consummate a gift of the sum of money represented thereby.

Pickslay v. Starr, 76 Hun, 10, affirmed.

(Argued May 1, 1896; decided May 26, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered

upon an order made February 13, 1894, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The action was brought to recover a balance alleged by the plaintiff to be due to him from the defendant, pursuant to an agreement between them relating to his compensation while in the latter's employment. For a number of years, prior to the year 1889, the defendant had been in the habit of giving to the plaintiff at Christmas a present of $2,500. In April, 1889, an arrangement was made between them, by which the plaintiff's salary was increased to $9,000, from and after May 1, 1889 ; and from and after May 1, 1890, in addition to the sum of $9,000, plaintiff was to receive a commission for the year of one and one-half per cent upon the amount of the defendant's sales in excess of $600,000. In the evening of December 24, 1889, at an interview between the plaintiff and the defendant, the latter handed to the former a check for $2,500, with an expression of his wishes for a merry Christmas. On the day after Christmas another interview occurred between the parties; after which the plaintiff was departing for his home, but remembering that he had not spoken to the defendant about the present, he returned, saw the defendant and said to him: "I came back to thank you for your present to me, and, also, on behalf of Mrs. Pickslay to return her thanks to you for the present you gave her." The defendant replied that he "was very glad that they were pleased." A few days later the defendant's attention was called to the check by his bookkeeper and, being asked what should be done with it, he directed him to charge it to the plaintiff's account. The defendant did not, however, then speak to the plaintiff upon the subject; nor was the plaintiff informed with respect to the entry in the books, until in May following, when it appeared in an account rendered to him by the bookkeeper. At that time the defendant was absent in Europe. In September of that year, and again in the winter or spring following, the plaintiff says he spoke to the defendant about the bookkeeper having charged the $2,500 against

55

him, and that there was discussion between them; the plaintiff insisting that he had every reason to suppose it was a gift, and the defendant insisting that it was a mistake. In April, 1891, the plaintiff entered into business for himself. According to the defendant's evidence, the new arrangement, with respect to the compensation of the plaintiff, was made upon the basis of increasing his previous salary by adding to it the usual Christmas gift of $2,500 and a still further sum. He had forgotten about the new arrangement between them, at the time when he made the Christmas gift in question, and, in making it, he had followed the habit of previous years. He testified that the whole thing was a mistake and that he had not intended to give the $2,500 to the plaintiff, in addition to his salary and commissions under the new arrangement. The finding of the referee, before whom the trial was had, is "that the sum of $2,500, paid by the defendant on or about the 24th day of December, 1889, to plaintiff, was not a payment on account of salary, but was a gift from defendant to plaintiff."

The dispute between the parties turns upon whether there was a valid gift of the $2,500 to the plaintiff, as he claims; or, whether the gift having been made under a mistake, as the defendant claims, it was invalid and could be now offset against the demand of the plaintiff for the balance due to him in account, at the time when he left the defendant's employment, in April, 1891. The judgment entered upon the direction of the referee in the plaintiff's favor, for the amount as claimed by him, has been affirmed by the General Term, and the defendant has appealed to this court from the judgment of affirmance.

*Delos McCurdy* for appellant. A gift will not be presumed. Neither will an intention to make a gift be presumed. All the facts necessary to prove such intention, and all the facts necessary to prove a gift made in pursuance of such intent, must be clearly established. (*Devlin* v. *G. Sav. Bank,* 125 N. Y. 756; *Lewis* v. *Merritt,* 113 N. Y. 386; *Grymes*

v. *Hone*, 49 N. Y. 17 ; *Grey* v. *Grey*, 47 N. Y. 552 ; *Beaver*
v. *Beaver*, 117 N. Y. 428 ; *Jackson* v. *T. T. S. R. Co.*,
88 N. Y. 526 ; *Smith* v. *State*, 2 Lea, 619.) There is no
known rule of law or of equity by which a mistake can be
converted into an intentional act. (Bispham's Prin. of Eq.
§§ 185, 187, 190 ; Kerr on Fraud & Mis. 406 ; Haynes' Out-
lines of Eq. 80, 132 ; Pom. Eq. Juris. §§ 839, 841, 849 ; Pol-
lock on Cont. [4th ed.] 411 ; *Cooper* v. *Phibbs*, L. R. [2 H.
L.] 149 ; *Eaglesfield* v. *Londonderry*, L. R. [4 Ch. Div.] 693 ;
*Bingham* v. *Bingham*, 1 Ves. Sr. 126 ; *Cocking* v. *Pratt*,
1 Ves. Sr. 400 ; *Townshead* v. *Stangroom*, 6 Ves. 328 ;
*Broughton* v. *Hutt*, 3 De G. & J. 501 ; *In re S. L. Ins. Co.*,
1 De G., J. & S. 29 ; *Reynell* v. *Sprye*, 8 Hare, 222 ; *Blake-
man* v. *Blakeman*, 39 Conn. 320.) The mere delivery of the
check did not make a valid gift of $2,500. (*Lunt* v. *Bank
of N. America*, 49 Barb. 221 ; *Cowperthwaite* v. *Sheffield*,
3 N. Y. 243 ; *Winter* v. *Drury*, 5 N. Y. 525 ; *Chapman* v.
*White*, 6 N. Y. 412 ; *Æ. Nat. Bank* v. *F. Nat. Bank*, 46
N. Y. 83 ; *Tyler* v. *Gould*, 48 N. Y. 682 ; *Duncan* v. *Berlin*,
60 N. Y. 153 ; *Atty.-Gen.* v. *C. L. Ins. Co.*, 71 N. Y. 325 ;
*Bank of the Republic* v. *Millard*, 10 Wall. [U. S.] 152.) The
delivery of the check did not carry with it complete control
of and dominion over the money ; nor did it at the same time
divest defendant of his control and dominion over the money
itself. (*Jackson* v. *T. T. S. R. Co.*, 88 N. Y. 520 ; 2
Kent's Comm. 439 ; *Brink* v. *Gould*, 7 Lans. 425 ; *Irish* v.
*Nutting*, 47 Barb. 370 ; *Noble* v. *Smith*, 2 Johns. 52 ; *Bedell*
v. *Carll*, 33 N. Y. 584 ; *Curry* v. *Powers*, 70 N. Y. 212 ;
*Beaver* v. *Beaver*, 117 N. Y. 421 ; *Williams* v. *Guile*, 117
N. Y. 347 ; *Ridden* v. *Thrall*, 125 N. Y. 572 ; *Young* v.
*Young*, 80 N. Y. 424 ; *In re Crawford*, 113 N. Y. 560 ;
*Kirk* v. *McCusker*, 3 Misc. Rep. 277.) A check, drawn in
the ordinary form, is a mere inland bill of exchange, and can-
not constitute the subject-matter of a valid gift, *inter vivos* or
*causa mortis*, unless presented and accepted. (*Chapman* v.
*White*, 6 N. Y. 417 ; *Atty.-Gen.* v. *C. L. Ins. Co.*, 71 N. Y.
330 ; *Harker* v. *Anderson*, 21 Wend. 373 ; *Coates* v. *F. Nat.*

*Bank,* 91 N. Y. 26 ; *Harris* v. *Clark,* 3 N. Y. 93–110 ; *In re Smither,* 30 Hun, 632–635 ; *In re James,* 146 N. Y. 94 ; *Hewitt* v. *Kaye,* L. R. [6 Eq.] 198 ; *In re Beak's Estate,* L. R. [13 Eq.] 489 ; *S. Nat. Bank* v. *Williams,* 13 Mich. 282.)

*William H. Ford* for respondent. The intent in defendant's mind to give the plaintiff a Christmas present of $2,500 was clearly proved. (*Bedell* v. *Carll,* 33 N. Y. 581 ; *Beaver* v. *Beaver,* 117 N. Y. 421 ; *Burgess* v. *Simonson,* 45 N. Y. 225 ; *Cook* v. *Whipple,* 55 N. Y. 150–165 ; *Tyng* v. *U. S. S. & T. B. Co.,* 60 N. Y. 644 ; *Reynolds* v. *Robinson,* 82 N. Y. 103–106 ; *Raux* v. *Brand,* 90 N. Y. 309–312 ; *Derham* v. *Lee,* 87 N. Y. 599–605.) Defendant cannot recover in an action for money paid by mistake. (*Haviland* v. *Willets,* 141 N. Y. 52 ; *E. C. Sav. Bank* v. *Roop,* 48 N. Y. 292 ; *Thomas* v. *Bartow,* 48 N. Y. 193 ; *Grymes* v. *Sanders,* 93 U. S. 55 ; *Mayer* v. *Mayor, etc.,* 63 N. Y. 455–457.) The delivery of the $2,500 was complete and amply proven. (*Harris* v. *Clark,* 3 N. Y. 113 ; *Mandeville* v. *Welch,* 5 Wheat. 277 ; *In re Allison,* 124 N. Y. 665.)

Gray, J. This is a peculiar case. It is perfectly clear that the defendant intended, at the time, to give to the plaintiff the Christmas present of $2,500 and it is, also, equally clear that, subsequently, he bethought himself of the new arrangement, which he had made with respect to his clerk's compensation, and became conscious of the mistake he had committed. Of course, notwithstanding the new arrangement between them, which, according to the defendant, was upon a basis which would make the usual annual Christmas gift no longer a thing to be expected, there was nothing to prevent his continuing to recognize the peculiar value to him of the plaintiff's services by way of gifts of money. When, upon the occasion of their interview on Christmas eve, he handed the envelope containing the check to the plaintiff, with the expression of his good wishes, there can be no doubt that there were present the two elements necessary to constitute a perfect gift,

viz. : the intention to give, followed by a delivery of the thing given. The argument that the defendant could not have intended to give the $2,500, because that sum would then have been given twice, in view of its having been included by the defendant in the new arrangement with respect to compensation, is not quite sound. All that is necessary to constitute intention, and all that we understand, legally or otherwise, by intention, is the design, or determination, of the mind and that mental condition may exist, when an act is done, irrespective of the fact that, were something else then recalled, it might not have acted in the same manner. This is not like the case where parties come to some agreement, in the belief that a certain state of facts exists, and money is paid by the one to the other in consequence thereof, and it subsequently appears that there was a mistake with regard to the facts. Money, when so paid, is deemed to have been received by the one to whom it is paid to the use of the one paying it. The mutual error, which affected the agreement between the parties, requires that they should be remitted to their original rights. In such a case, in equity and in justice, the money does not belong to the party receiving it. So, too, if there is an equitable basis for redress, by reason of some mistake of fact in the contract, due to the ignorance or forgetfulness of the party, equity will not infrequently intervene. The principle is, in such cases, that there is not that consent of the minds which is essential to the perfect agreement. A gift, however, requires no consideration and depends upon no agreement, but upon the voluntary act of the donor only, and is accomplished by a delivery of the subject of the gift.

The defendant's silence towards the plaintiff for months afterwards, until the latter, becoming acquainted with the fact of the bookkeeper having charged the sum to his account in the books, had the opportunity of speaking with him upon the subject, is a very remarkable fact and one which militates against the defendant's case in every way. The finding of the referee, that there was a gift from the defendant to the plaintiff, is not only supported by the affirmative evidence in

the case given by the plaintiff, but it would have support in the inferences which might be drawn from the strange silence of the defendant towards the plaintiff subsequently. Indeed, it is difficult to see, giving all faith to the defendant's testimony about the matter, how the referee could have come to a different conclusion than he did upon the facts. If the defendant's position was tenable, that a gift under a mistake invalidates it and the giver is at any time justified in setting up the mistake in order to defeat the gift, it might, in instances, result in great injustice, if not hardship. The party receiving an important gift might be so misled by the silence of the other into believing, not only that the giver had meant to give, but that he had not repented him of his act, as, in that belief, to have spent the money, or to have changed his mode of life in consequence. How was the plaintiff to know, after the gift of this money to him, accompanied with the friendly expressions of the giver, in the time that followed, that he had incurred an obligation to return the money? It would be a very harsh rule to lay down, that a party, receiving a gift under the circumstances of the present case, might incur, to quote the language in *Haviland* v. *Willets* (141 N. Y. at p. 52), " an unknown and unsuspected obligation, if required, to return the fund."

In answer to the argument of the appellant, that the delivery of the donor's check did not make a valid gift of the sum of $2,500, it is sufficient to say that it is not like the making of a promise, such as would be the donor's promissory note, where the gift is not consummated until the delivery of the thing promised and remains revocable until such delivery. The delivery of a check is the delivery of something which represents a certain sum of money, which the drawer of the check intends that the payee shall, in fact, have. What the defendant gave to the plaintiff, while in form his own check, in fact, was an order upon the bank to pay to him the sum of money represented by it. That the transaction was complete, by the payment of the check to the plaintiff, is amply evidenced; if by nothing else, by the very direction of

the defendant to his bookkeeper to charge its amount to the account of the plaintiff in his books. The reasoning of the referee with respect to this point made by the appellant is perfectly satisfactory.

The judgment appealed from should be affirmed, with costs.

All concur, except O'BRIEN, J., not voting.

Judgment affirmed.