## MARTIN–BARRIS CO. v. JACKSON.

(Supreme Court, Appellate Division, Fourth Department.   December 18, 1897.)

1. RESCISSION OF CONTRACT—LACHES.
   Plaintiff shipped lumber to defendant under a contract of exchange for cultivators. Defendant made a claim for shortage of lumber, and plaintiff replied, three months after their delivery, that the cultivators were worthless, and not in accordance with the contract, and demanding the difference in the contract price between the cultivators already delivered and the lumber furnished. A year later plaintiff wrote asking if the defendant could furnish cultivators as per contract. Two years and seven months after the plaintiff's first letter he wrote defendant, notifying him that the cultivators were held subject to his order, and demanding the full contract price for the lumber. *Held*, that by the letters written and the long delay plaintiff lost its right of rescission of the contract.

2. SAME—QUESTION FOR COURT.
   Where there is no dispute about the facts of an attempted rescission of a contract, whether or not it was made within a reasonable time is a question of law for the court.

3. ACTION FOR PRICE—EVIDENCE OF VALUE.
   Where one sues to recover the value of goods furnished upon a contract which he has rescinded, he must prove the value of them outside the value expressed in the contract, and the defendant has a right to introduce evidence bearing upon the value.

Appeal from trial term, Onondaga county.

Action by the Martin-Barris Company against Amos Jackson. From a judgment for plaintiff, the defendant appeals. Reversed.

This action was begun May 11, 1893, to recover $1,636.44, the contract price, at $20 per thousand, for 81,822 feet of ash and hickory lumber, which the plaintiff alleges its assignor, the firm of Martin & Barris, was induced to sell June 13, 1889, and deliver to the defendant June 14, 17, and 18, 1889, upon his false and fraudulent representations in respect to the quality and value of cultivators taken in exchange, and also to recover $37.53 paid for freight, $50 paid for painting, and $30 paid for storage on the cultivators. Judgment is demanded for $1,753.97, the amount of the four sums above mentioned. The defendant interposed an answer in which he denied the allegations of fraud, and also denied that the plaintiff or its assignor had necessarily expended $117.53 for freight, painting, and storage of the cultivators, and alleged that he had shipped to Martin & Barris all cultivators called for by them. It is further alleged in the answer, as a defense and also as a counterclaim, that Martin & Barris delivered only 65,822 feet of lumber, which was not of the quality falsely represented by them, but of an inferior quality, and

worth only $13 per thousand, or $855.68. The defendant demands in his prayer for relief that the complaint be dismissed, with costs, but does not demand an affirmative judgment for damages on account of his alleged counterclaim. The plaintiff served a reply denying all the allegations of the alleged counterclaim. The issues so joined were brought to trial before a jury. The court instructed the jury that, in case they found the issues of fact in favor of the plaintiff, it was entitled to recover the contract price for the lumber and the sum paid by plaintiff for freight on the cultivators, with interest on these sums from the date of the shipment of the lumber, amounting in the aggregate to $3,336.81, for which sum the jury returned a verdict for the plaintiff.

This action arose out of a written contract of which the following is a copy:

"Cleveland, O., June 13, 1889.

"Memorandum of agreement made this day between Martin and Barris, of Cleveland, Ohio, and the Jordan Agricultural Works, of Jordan, N. Y. Said Martin and Barris agree to deliver to said the Jordan Agricultural Works, on cars in Cleveland, fifty thousand (50,000) feet or more of 1 in., 1¼ in., 1½ in., 2 in., 2½ in., 3 and 4 in., common and cull white ash and hickory plank; and do further agree to receive from said the Jordan Agricultural Works in payment thereof their Brooks cultivators, with No. 3 attachment, at discount from price list of 50 and 25 per cent. Said Jordan Agricultural Works agree to pay said Martin and Barris, in exchange trade as above noted, for the ash and hickory lumber, at the rate of twenty dollars ($20) per thousand feet.

"Martin & Barris,
"W. B. Martin.
"Amos Jackson, Prop'r Jordan Agril. Works,
"Pr. D. Evans."

When the contract was entered into, and for a short time afterwards, Martin & Barris, a firm, was engaged in dealing in lumber at Cleveland, Ohio, which firm shortly afterwards was incorporated under the laws of Ohio, under the name of the Martin-Barris Company, which corporation succeeded to the interests of the firm in the contract. The defendant at the date of the contract was, and since has been, engaged in manufacturing agricultural implements at Jordan, N. Y., under the name of Jordan Agricultural Works. The lumber, the price of which this action is brought to recover, was delivered to the defendant June 14, 17, and 18, 1889, at Cleveland, Ohio. It was agreed on the trial that the defendant had delivered to Martin & Barris, the vendors of the lumber, 52 cultivators, at the agreed price of $18.19 each; total, $945.88. The 52 cultivators were delivered in June, 1889, and no more cultivators were ordered by Martin & Barris or by the plaintiff. Shortly after the defendant received the lumber he sold and delivered it to various persons in car-load lots, as shipped at Cleveland, Ohio. September 20, 1889, the defendant wrote the plaintiff that claims had been made by the persons to whom he sold the lumber that the quantity delivered was considerably less than the quantity called for by the bills of lading. September 25, 1889, the plaintiff replied to this letter, saying that the lumber billed was delivered to the defendant's agent at Cleveland, Ohio, who accepted it, which must end the matter of the claim for shortage. In the same letter the plaintiff stated that the cultivators received were not new machines, but old ones, of different patterns, and wholly unlike the model, and demanded that the defendant remit by draft $604.06, the difference between the contract price of the lumber and the contract price of the cultivators received. No fault was found by either party to the contract as to the other's performance of it prior to these letters. October 4, 1889, the defendant replied to the plaintiff's letter of September 25, 1889, expressed surprise, and stated that he had cultivators ready for delivery awaiting an order to ship them. October 14, 1889, the plaintiff replied to defendant's letter of October 4th, and reiterated the demand for $604.06. Nothing further was done by the parties until October 30, 1890, when the plaintiff wrote the defendant, stating that several cultivators were due, that those received were worthless, and asked if the defendant could furnish cultivators as per sample shown and according to representations. November 4, 1890, the defendant replied that he had cultivators on hand to complete the contract, and that he had been sued for shortage on lumber. April 27, 1892,

the plaintiff wrote the defendant stating that the cultivators received were valueless, and notified him that they were held subject to his order, and that they would be returned upon receiving shipping directions, and also demanded the payment of $2,012.79, the value of the lumber fraudulently obtained, besides interest and expenses.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Frederick A. Lyman, for appellant.
William S. Jenney, for respondent.

FOLLETT, J. When a vendor has, by the fraud of a vendee, been induced to enter into a contract by which the former parts with his property, the vendor may rescind the contract, if he acts promptly on the discovery of the fraud, and recover the property from the vendee by an action of replevin, or he may recover the value of the property in an action for its conversion,—trover,—and perhaps he may recover the value of the property in an action on the case stating the facts,—an action ex delicto,—without resorting to an action in replevin or in trover. But, before the vendor can maintain an action in either of these forms, he must first legally rescind the contract. To effect a legal rescission of the contract, he must give notice of his rescission, and must return, or offer to return, whatever he has received under the contract, which must be done promptly on the discovery of the fraud. If he fails to disaffirm the contract promptly, he is deemed to have ratified it, and can recover his damages, if any have been sustained, only by an action on the contract for a breach of warranty or for false representations.

The first question presented is whether the plaintiff by its acts effected a legal rescission of the contract so as to entitle it to maintain an action for the recovery of the value of the property which its predecessor delivered to the defendant. The plaintiff alleges that it was induced to enter into the contract and deliver the lumber thereunder by reason of the false representations of the defendant as to the usefulness and value of the cultivators. It is also alleged that the defendant misrepresented to the plaintiff's predecessor the use he proposed to make of the lumber purchased; that he intended to use it in manufacturing cultivators, but that the defendant, instead of so using it, sold it to various purchasers. It is difficult to see that this last representation afforded any legal ground for relief, as it could make no difference with the plaintiff whether the defendant used or sold the lumber. Fifty-two of the cultivators, all that were called for by the plaintiff, were delivered in June, 1889. The plaintiff had in its possession the model upon the strength of which the cultivators were purchased. A cultivator is not a complicated machine, and it was easy for the plaintiff to have discovered, on inspection, whether the cultivators delivered corresponded with the model and with the representations made. No complaint was made until September 25, 1889, upon the receipt of a letter from the defendant claiming a shortage in the lumber delivered. Then the plaintiff stated that the cultivators were not new ones, but old ones, of different patterns, and wholly unlike the model. The plaintiff had

then discovered the fraud, if fraud there was. It did not rescind the contract, but, on the contrary, demanded that the defendant remit by draft the difference between the contract price of the lumber and the contract price of the cultivators, which was in affirmance, and not in disaffirmance, of the contract. October 14, 1889, the plaintiff again demanded the payment of the difference in the price between the lumber delivered and the cultivators received. Nothing further was done until October 30, 1890, nearly a year later, when the plaintiff wrote the defendant stating that several cultivators were due, that those received were worthless, and asked if the defendant could furnish cultivators corresponding with the model shown and according to the representations made. There is no hint in this letter that the plaintiff intended to disaffirm the contract. On the contrary, the letter evinces an intention to affirm it. November 4, 1890, the defendant replied that he had cultivators on hand to complete the contract, and that he had been sued for shortage on the lumber. April 27, 1892, the plaintiff wrote the defendant, again stating that the cultivators were valueless, and notified him that they were subject to his order, and would be returned upon receiving shipping directions, and also demanded the payment of $2,012.79, the value of the lumber alleged to have been obtained fraudulently, besides interest and expenses. So it appears by the correspondence between the litigants that the plaintiff did not attempt to rescind this contract until after a lapse of 2 years, 10 months, and 14 days from the date of the contract. Besides this, the attempted rescission was not made until after the lapse of 2 years, 7 months, and 2 days after the discovery of the fraud, as appears by the plaintiff's letter of September 25, 1889, and after, as before stated, the plaintiff had three times written, after its alleged discovery of fraud, demanding that the contract be performed. Twice the plaintiff had demanded a payment of the difference in cash between the prices of the commodities exchanged, and once that cultivators corresponding with the sample should be delivered. By these letters, and by the long delay, the plaintiff lost its right to rescind the contract. Kinney v. Kiernan, 49 N. Y. 164; Strong v. Strong, 102 N. Y. 69, 5 N. E. 799; Hallahan v. Webber, 7 App. Div. 122, 40 N. Y. Supp. 103. The rule expressed in these cases is a universal one, and is stated by all the text-books where the subject of rescission is discussed. The judgment and the order are sought to be sustained on the theory that it was a question of fact for the jury whether the attempted rescission of the plaintiff was made within a reasonable time. There is no dispute in the evidence about the facts bearing upon the question of the attempted rescission, and the question whether the attempted rescission was made within a reasonable time was a question for the court. Roth v. Railroad Co., 34 N. Y. 548, 553; Hedges v. Railroad Co., 49 N. Y. 223; Nunez v. Dautel, 19 Wall. 560; Kimball v. Insurance Co., 8 Gray, 33; and also May, Ins. (3d Ed.) 368; 19 Am. & Eng. Enc. Law, 640. Under the undisputed evidence in the record, the plaintiff did not attempt to rescind the contract within a reasonable time, and the court should have so held as a matter of law, and granted the defendant's motion for a nonsuit.

Again, the court erred in rejecting the defendant's offer to prove the quality and value of the lumber delivered. In an action to recover property, or the value thereof, fraudulently acquired from the plaintiff, he may recover its value, whether it be more or less than the contract price. Terwilliger v. Knapp, 2 E. D. Smith, 86. The plaintiff could not stand on the contract as fixing the price or value, and yet recover on the theory of a rescission of the contract. A party to a contract, if he attempts to rescind it, must rescind it in toto.

For these errors the judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except WARD, J., who concurs on last ground stated in opinion.