the contract in a wrong, erroneous, and disadvantageous manner, whereby the cost of the work was largely increased, and the plaintiff was put to great loss, damage, and expense; and that this additional expense was caused by the defendant compelling the plaintiff to withdraw certain sheet piling which had been placed to uphold the bank of the sewer while the same was being built.    Among the provisions of the contract were the following:

"The sides of the excavation shall be supported by suitable planking and shoring wherever necessary, and in all cases the same are to be drawn as the work progresses, unless otherwise ordered." "Where sheet piling is rendered necessary, and used only in prosecuting the work, no allowance will be made therefor, and it shall in all cases be drawn as the work progresses unless otherwise ordered by the said commissioner." "When sheet piling is so retained, the price bid for timber for bracing and sheet piling when ordered to be left in the trench will be allowed."

It is claimed upon the part of the appellant that the duty of determining whether or not the sheet piling should be left in the trench was laid upon the defendant by the express terms of the contract, and its erroneous decision that it was not necessary that the sheet piling should remain was the direct cause of the increased cost occasioned to the plaintiff.    We are unable to place this construction upon the contract.    The provisions of the contract are that the piling shall be withdrawn in all cases as the work progresses, unless otherwise ordered, in which case payment is allowed.    In the absence of instructions to the contrary, the plaintiff was bound to withdraw the piling, and the work was not complete until this was done; and if, in withdrawing the piling, he injured the work already done, and therefore could not deliver it in completed condition without additional expense, that seems to have been what the plaintiff undertook under his contract, and he cannot recover from the defendant. Whether or not it was wise for the plaintiff to enter into such a contract cannot affect the question as to his right to a recovery for this additional expense.    He did enter into such a contract; he was not relieved from its obligations; and he has simply complied with its requirements.    This seems to be all there is of the question involved on this appeal.

The judgment should be affirmed, with costs.    All concur.

---

AMERICAN FORCITE POWDER MFG. CO. v. HANNA et al.

(Supreme Court, Appellate Division, First Department.    June 24, 1898.)

FRAUDULENT CONVEYANCE—EVIDENCE.
    In a creditor's action to set aside a conveyance of real property from the debtor to his wife, as having been made with intent to hinder, delay, and defraud creditors, it appeared that in 1893, on well-grounded belief of his early death, the debtor conveyed the property in question, consisting of a house and lot, where he resided, and an apartment house, and two lots, to his wife.    At that time his total indebtedness, including that of $450 to the plaintiff, was less than $1,000, and after the conveyance in question he remained in possession of property worth nearly $5,000, and thereafter, from property subsequently acquired, he satisfied all claims against him except that of the plaintiff.    He did not, in fact, die until some three years

after the conveyance. At the time of conveying the property, he was compelled, on account of his health, to leave the state. None of his creditors were then pressing him for money, and no suits had been commenced against him, and there was nothing to show that he was then insolvent or unable to pay all his debts. *Held*, that the complaint was properly dismissed.

Appeal from special term, New York county.

Action by the American Forcite Powder Manufacturing Company against James Hanna and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and INGRAHAM, JJ.

L. Laflin Kellogg, for appellant.
W. E. Benjamin, for respondents.

INGRAHAM, J. One Robert Hanna, being the owner of several pieces of property in the city of New York, on June 21, 1893, executed a deed of this property, which was heavily incumbered, to his wife. The property conveyed consisted of a house and lot on Amsterdam avenue, where. the grantor resided with his family, an apartment house on 121st street, and two lots on 118th street. This deed seems to have been retained in the possession of the attorney for the parties who prepared it until January 12, 1894, when it was recorded. At the time Hanna executed this deed he was in bad health, and had been advised to give up business. The mortgage on two pieces of the property conveyed having been foreclosed, the property was sold under the judgment. Hanna died on March 17, 1896. At the time this conveyance was executed, Hanna was indebted to the plaintiff in the sum of $451.03. In December, 1895, the plaintiff commenced an action against Hanna to recover this amount, in which judgment was entered on January 13, 1896. Execution having been returned unsatisfied, this action was brought to set aside this conveyance of Hanna to his wife, on the ground that it was made with intent to hinder, delay, and defraud creditors. It appeared in the evidence that at the time this conveyance was made, Hanna was indebted to the plaintiff in the sum of $451.03, and to the United States Dynamite & Chemical Company in the sum of $364.97. He had also been fined $100 for a failure to attend as a juror, and there was a claim of one Uhle for $117.30; but there was no evidence to show that this last sum was an indebtedness of Hanna at the time of the execution of this conveyance. As before stated, the real estate conveyed was subject to mortgages and liens for taxes in a large amount; but, as these obligations were first liens upon the property conveyed, and the conveyance was subject to them, they could hardly be considered as obligations of Hanna which would tend to show that he was insolvent at the time of this conveyance, or to show that the conveyance of the property subject to these mortgages and other liens was made with intent to hinder, delay, and defraud his creditors. The attorney who drew the deed was called by the plaintiff, and testified that the grantor instructed him to draw the deed conveying the property to his

wife; that the reason of the conveyance was stated to be that the grantor was very sick, and had been ordered to go West by his doctor, who told him that he could not recover; and that he desired to put in his wife's name the real estate which he owned at the time.    The deed, after it was executed, was returned by Hanna to the attorney who prepared it, and was retained by the attorney until it was recorded.    It further appeared that at the time the deed was executed Hanna had on deposit in various banks something over $2,000.    He had also had a considerable amount of personal property, which had been used by him in his business, but which, subsequent to this conveyance, had been sold for upwards of $2,800; this amount being received by Hanna.    In addition, Hanna had some real estate in the state of Pennsylvania, the value of which was not stated.    It would seem that the total amount of Hanna's indebtedness at the time of the execution of this conveyance was less than $1,000, and he remained in possession of property at that time, including the balance of deposits in the banks, of nearly $5,000. It also appeared that subsequent to this conveyance his wife died, and he thereby became, as tenant by the curtesy, interested in certain real estate that his wife had owned when she died; and from the proceeds of the sale of that property, or his interest in that property, all of the claims against him, except that of the plaintiff, were paid.    Upon these facts the court below decided that the conveyance was not made with intent to hinder, delay, and defraud creditors, and dismissed the complaint.

We think there was evidence to sustain this finding.    The object of this conveyance, as stated by Hanna to his attorney, was to present this property to his wife on account of the condition of his health, as his physician had advised him that he would live but a few months.    The property was largely incumbered; and as Hanna was compelled, on account of his health, to leave New York, to preserve the property it was necessary that there should be some one who could protect it.    Hanna was then in business, and subsequent to the conveyance executed contracts for work to be performed. He had this property used in his business, and he had money owing to him by others.    None of his creditors at that time was pressing him for money.    No suits had been commenced against him.    There is nothing to show that this conveyance had any relation to these small claims against him, or that, if his creditors had pressed him for payment, they would not then have been promptly paid.    There is nothing to show that he was at this time insolvent, or unable to pay all his debts.    On the contrary, the evidence is conclusive that the money which he had in the banks was more than sufficient to pay everything that he owed.    As was said in Kain v. Larkin, 131 N. Y. 300, 30 N. E. 105:

"The person assailing the conveyance assumes the burden of showing that it was executed in bad faith, and left the grantor insolvent, and without ample property to pay his existing debts and liabilities. * * * An owner of real estate may make a voluntary settlement thereof upon his children, provided he has ample property left to satisfy all the just claims of his creditors."

The fact that Hanna lived longer than he was advised he would live at the time the conveyance was executed, and that in consequence thereof the property which he had retained with which to pay his debts was exhausted before his death, so that this particular claim of the plaintiff was not satisfied, cannot relate back to the time the conveyance was made, so as to show an intent different from that which existed when the conveyance was made. If Hanna had died within the time that he expected at the time he made the conveyance, his estate would have been solvent and all his creditors would have been paid; and there is really nothing to show that the existence of these two or three small debts, which Hanna had money on hand to pay at the time the conveyance was executed, had anything to do with the conveyance of this property to his wife.

We think that the learned judge was justified in dismissing the complaint, and the judgment is affirmed, with costs. All concur.