(24 Misc. Rep. 603.)

KAUFMANN v. McLAUGHLIN.

(Supreme Court, Special Term, New York County. September, 1898.)

RESCISSION OF SALE—FRAUDULENT REPRESENTATIONS—LACHES.

 A sale of premises was made on the representation of the vendor that a silk factory was to be erected on adjoining lots. Seven months later an iron factory built on the adjoining lots was completed, and commenced operations. The vendee continued to pay interest on the purchase-price mortgage, and to collect rent, for a year thereafter. *Held*, that the right to rescind the contract of sale was barred by laches.

Action by Sophie Kaufmann against John McLaughlin to rescind a sale of certain premises for false representations. Judgment for defendant.

Euring & Geiger (John A. Straley, of counsel), for plaintiff.
Foster & Foster (Walter C. Foster, of counsel), for defendant.

DALY, J. The plaintiff claims that she was induced to purchase the house and lot described in the complaint, a five-story tenement, known as "No. 338 East Ninety-Fourth Street," in reliance upon the defendant's statement that he was about erecting on adjoining land a silk factory, which would greatly benefit the premises. The defendant denies the making of such representations, and states that all that was said on the subject of a silk factory was after the negotiations were closed, and the parties went up to look at the property, when the plaintiff asked what was going to be built on the defendant's vacant corner, adjoining No. 338, and he replied: "There was a party here about a week ago about buying those lots. They were talking about putting a silk factory on them." There was a third party present at the negotiations,—a Mr. Kramer,—who acted as a sort of adviser of the plaintiff, having undertaken to find an investment for her money, and who brought her and the defendant together to negotiate. Kramer was paid a commission on the sale by the defendant. He was examined as a witness, and he corroborates the plaintiff to the extent of testifying that the defendant, while the negotiations were in progress, stated to plaintiff that a silk factory was coming in the neighborhood. It appears that the plaintiff had had some knowledge of a neighborhood in which a silk factory was operated, and was favorably impressed with the advantage of owning a tenement near such an establishment, and it is likely that the prospect of having such a neighbor would be an inducement to the purchase. It appears from the plaintiff's testimony that she understood from the statements of defendant that his representations referred to a proposed structure adjoining the rear of the lot she purchased. In January, 1896, soon after the deed was delivered, excavations were begun upon lots adjoining the rear of her lot, and a factory building was erected by one Hapfel, and commenced to be used by him as an iron factory in September, 1896. The operation of this iron factory is claimed to have been injurious in no small degree to the plaintiff's use of her tenement, although on the part of the defendant it is shown that there were several other factories in the neighborhood which might be considered fully as objectionable.

But if the plaintiff be held to have made out a case of false representation inducing the purchase, and sufficient to entitle her to rescind the contract upon taking prompt action after the discovery of the deception, the fact is undisputed that she suffered about a year to elapse before manifesting any intention to disaffirm. The law requires, as a condition of equitable relief, that the injured party should disaffirm immediately upon discovery of the fraud. If, with full knowledge of it, he continues to avail himself of the benefits of his bargain, or to perform his contract, he will be deemed to have elected to affirm it. In this case the plaintiff continued in possession of the premises, and paid interest to the defendant upon the purchase-money mortgage which she had given him upon taking title. She took the deed and gave the mortgage January 2, 1896. The iron factory was completed and operated in September, or, at the latest, October, 1896. According to the plaintiff's evidence, the defendant acknowledged to her at the latter date the deception he had practiced, and yet she did not begin this action for rescission until September, 1897, and during the interval continued to pay him interest on the mortgage, and to collect and use the rents of the premises. This failure to assert her alleged right of rescission is fatal to the equitable relief now sought, according to many authorities. In Hallahan v. Webber, 7 App. Div. 122, 40 N. Y. S. 103, it is said by Van Brunt, P. J., in an opinion concurred in by all of his associates:

"In the cases of Masson v. Bovet, 1 Denio, 69; Cobb v. Hatfield, 46 N. Y. 533; Hammond v. Pennock, 61 N. Y. 145; Schiffer v. Dietz, 83 N. Y. 300; Strong v. Strong, 102 N. Y. 69, 5 N. E. 799,—and many other cases which might be cited, it is stated that it is a settled rule that the right to rescind a contract for fraud must be exercised immediately upon its discovery, and that any delay in doing so will be deemed an election to affirm the contract."

In that case the plaintiff did not elect to rescind until three months after the discovery of the fraud, and the delay was held to be fatal, the court further saying:

"Where a party, upon discovering fraud in a contract, lies by and speculates as to which is the better policy to pursue,—to disaffirm, or to allow the contract to stand,—he cannot be permitted, after the course of events has demonstrated that disaffirmance is the better policy, to rescind. Equity requires that he should elect promptly, and not delay action and permit the other party to treat the contract as existing and act accordingly. * * * Whatever may be the true interpretation of the rule in England, as laid down in the case of Clough v. Railway Co., L. R. 7 Exch. 26, upon which the learned judge below relied in coming to the conclusion which he did in deciding this action, in this state reasonable promptness of action in disaffirmance of a contract is required upon the part of the party seeking to rescind. This rule is further illustrated in Pickslay v. Starr, 149 N. Y. 432, 44 N. E. 163."

See, also, Martin-Barris Co. v. Jackson, 24 App. Div. 354, 48 N. Y. S. 586, decided upon the authority of the foregoing case, and of Kinney v. Kiernan, 49 N. Y. 164, and Strong v. Strong, 102 N. Y. 69, 5 N. E. 799.

Upon the discovery in September or October, 1896, of the falsity of the defendant's alleged representations, it was the plain duty of the plaintiff to notify the defendant at once that she repudiated the contract, and to tender back a deed of the house, and demand

a cancellation of the mortgage, and the return of the money paid; but notwithstanding that she then, as she states, taxed him with telling her lies, and received for answer that "it was all business," she went on paying him interest, and continued in the premises, thus evincing a choice to keep the property notwithstanding the alleged fraud. This course did not deprive her of an action for such damage as she could prove she had sustained by reason of the fraud, but it does deprive her of recourse to equity for the rescission of the contract. Her present action is exclusively for the latter remedy, and neither her complaint nor her proofs entitle her to a judgment for damages for the fraud. This action will therefore have to be dismissed upon the merits, leaving her to commence, if so advised, an action for damages; that is to say, for the difference between the value of the premises as they were and as they would have been if the alleged representations were true. Such proof may not be easy to obtain; the value of the premises with a silk factory adjoining being, under ordinary circumstances, apparently a mere matter of guesswork.

Judgment for defendant, with costs.