the sum of $2,176.67, and as thus modified affirmed, with costs to the appellants and respondents payable out of the estate. All concur, except EDWARDS, J., not voting.

(35 Misc. Rep. 21.)

In re ROSE.

(Surrogate's Court, Rensselaer County. May, 1901.)

1. GIFT INTER VIVOS—VALIDITY—TRUST.
    Testator, nine months before his death, made a deposit in a savings bank in his own name, "in the event of his death payable to Peter Rose," his executor and brother, and also directed the bank at the time to pay such money to Peter, who was with him, in the event of his death. Before leaving the bank, and after having deposited, testator gave to his brother the bank book. *Held*, that the gift was void as a gift inter vivos, and therefore not enforceable against the bank as a trust for the brother.

2. WITNESS—CROSS-EXAMINATION—TRANSACTIONS WITH DECEDENT.
    Where, on attempt to surcharge the accounts of an executor by an amount deposited in a bank by his testator as a gift thereof to the executor, he is cross-examined as to such gift, he is entitled to prove the whole transaction, and a conversation had with testator after the deposit but before the parties had left the bank.

In the matter of the settlement of the account of Peter Rose, executor of Philip B. Rose. Account of executor surcharged with certain deposit and interest.

J. A. Cipperly, for executor.
Clarence W. Betts, special guardian of infant legatees, contestants.

COMSTOCK, S. The contestants, who are grandchildren of the testator and residuary legatees under his will, appear by their special guardian, and object to the account on file, in that it does not include, as an asset of this estate, a certain deposit of $2,000, made by testator in the Powers Bank of Lansingburgh, and which remained there until his death, and they ask that the account be surcharged in that amount, with interest. The executor claims the same was given to him by the testator in his lifetime, and hence that it comprises no part of his estate. The special guardian, in order to maintain his contention, called the executor as a witness, and proved by him that he and his brother, the testator, on the 19th day of September, 1898, which was nine months before the testator's death, went to Schenectady to draw some money which was coming to the latter from the estate of his deceased wife; that the sum then received was $2,000; that on their return home they went to a bank in Lansingburgh. The witness then details what occurred then, as follows:

"He [meaning testator] stepped up, and said he wanted to put $2,000 in the bank there, and asked them if they would receive it, and they said

they would. He told me to hand it out, and give it to them, and I did so; and he says to the officials of the bank, 'I want this put in here for my brother Peter;' and they says, 'All right. Do you want it put in jointly?' 'No,' he says, 'I want it put in so that he will get it in case there should anything happen to me.' He says, 'I want my brother Peter to have this money;' and they put it in the bank, and gave the book to him, and he handed the book to me, and says, 'There is the book, and there is your money.' "

It subsequently appeared, on his cross-examination, that the book was not handed to him, nor the remark, "There is the book, and there is your money," made, until 15 or 20 minutes after the deposit, and when they were standing in the front part of the bank, on their way out to the street. No motion was made to strike this evidence from the record after it appeared that the occurrence did not take place until some 15 or 20 minutes after the deposit, and hence, under the stipulation of counsel that my decision might be reserved (see Rogers v. Rogers, 153 N. Y. 343, 348, 47 N. E. 452), I will allow the evidence of the executor as to what occurred in the front of the bank to stand, and deny the motion to strike out. A part of what was then said and done having been brought out or allowed to stand upon the record by the contestants, the other side is entitled to the whole conversation and transaction (Merritt v. Campbell, 79 N. Y. 625; Nay v. Curley, 113 N. Y. 575, 21 N. E. 698); and I am strongly inclined to believe that the testimony as to what took place between these men while they were still in the bank was competent as part of the transaction and business which brought them there. Their purpose was twofold: One was to make this deposit; the other, as manifested by the form of the deposit and order signed by the testator, was the gift to Peter. It is undoubtedly true that the conversation and delivery of the bank book in the front part of the bank was no part of the act of making the bank a depositary, for that was then finished and completed. Testator had thereby gone as far as he then could to evince what his intention was in respect to a gift to Peter. The occurrence at the bank window was intended to be not only a transaction of deposit, but also a transaction of gift in the form and manner expressed by the said entry in the bank book and the said written order. The latter element in this twofold transaction was not complete, as they understood it, until by the occurrence in front of the bank, 15 or 20 minutes after they had left the teller's window. If what then occurred had taken place at the window, immediately upon the testator's receiving the book, there could be no question as to the competency of the evidence as one entire transaction. As I have said, it was no part of the same transaction of depositing the money, but it was a part of that transaction so far as it related to a gift.

But with this evidence left standing, and giving it full force, I can see no escape from the conclusion, as a matter of law, that no gift has been established. The deposit was made by the testator in his own name, "In the event of death payable to Peter Rose." The order, which was signed by testator and filed with the bank when the deposit was made, reads:

"Lansingburgh, N. Y., September 19th, 1898.

"Bank of D. Powers & Sons: In the event of my death, please pay deposits in pass book No. 8,062, in your bank, to Peter Rose.

"Philip B. Rose."

This order and form of deposit show clearly what the testator's intention was at the time; it was only "in event of his death" that the same was payable to Peter. Certainly nothing had occurred prior to this deposit upon which a gift of the money could be predicated. Peter, in testifying to what took place at Schenectady, says:

"He handed me the money, and I counted it over to see whether it was all right. After he was satisfied it was all right, he gave me the money, and I counted it over to see whether it was all right. I said to him it was all right,—it was $2,000; and then he says, 'Well, put it in your pocket.' He says, 'you can carry it;' so I put it in my pocket, and the last roll was so big I couldn't get it in without showing pretty plain. He says, 'May be I can get that in my own.' He took that in his pocket, and we started for Troy."

The money was handed to Peter merely to "carry it," and one roll was immediately returned to testator, and remained in his possession until they got to the bank in Lansingburgh. "He asked me which bank to put it in, and I told him the Powers Bank in Lansingburgh, and we went up there." At the Powers Bank, testator, in the presence and with the acquiescence of Peter, made the deposit in his own name, thereby exercising full authority over the money as owner, saying that he did not want it in their joint names, but "I want it put in so that he will get it in case there should anything happen to me"; hence down to and at this time testator was the recognized owner, and the understanding of each was that Peter, only in the event of testator's death, was to have it. This is emphasized by the declaration of testator that he did not want it in their joint names; in other words, he did not want it so deposited that Peter could draw it during his (testator's) lifetime. It is true that he said at that time, "I want my brother Peter to have this money;" but this must be considered in connection with what he had just said, and with the form of the deposit,—that is to say, he wanted him to have it in event of his death, and not otherwise. If he had wanted to make an immediate gift, he could have done so, and allowed Peter to do as he pleased with it,—deposit it or not; or he himself could have deposited it in Peter's name. That was not his purpose. He did not want it so that Peter could draw it while he himself lived. Every circumstance shows that his purpose was to retain control over the deposit so long as he lived. This is evidenced, not only by the form of the deposit, but by what testator said at the time thereof. The case of Sullivan v. Sullivan, 161 N. Y. 554, 56 N. E. 116, is quite similar to the one under consideration. In that case Catherine Sullivan deposited in the Chemung County Bank $2,000, "payable one day after date to the order of herself, or, in case of her death, to her niece, Catherine Sullivan." Judge Werner, after referring to the contention that a trust was created either in the bank or the depositor, says:

"The inherent weakness of both of these propositions lies in the fact that in the transactions between plaintiff's intestate and the bank there was no immediate and fixed change of title to the fund. There was no intention, either expressed in terms, or to be implied from the nature of the transaction, to immediately transfer the title of the fund to the defendant or to the bank, except as the depositary and debtor of the depositor. This is the essential difference between the position of the defendant and the cestuis que trustent in the cases cited in support of her contention."

As was said by Chief Judge Church in Martin v. Funk, 75 N. Y. 138, 31 Am. Rep. 446:

"Enough must be done to pass the title, although when a trust is declared, whether in a third person or the donor, it is not essential that the property should be actually possessed by the cestuis que trustent, nor is it essential that the latter should be informed of the trust. ＊ ＊ ＊ The defendant acquired no rights in præsenti; she was to acquire them in futuro. This is the test which marks the essential difference between a valid gift inter vivos or an effectual parol trust, and the mere expressed desire or intention to do that in the future which can only be done by will."

See Markey v. Markey (Com. Pl.) 13 N. Y. Supp. 925, as to such a deposit being an attempt to make a testamentary disposition of property.

In Gannon v. McGuire, 160 N. Y. 476, 55 N. E. 7, the per curiam opinion says:

"The essential element of a gift inter vivos is the delivery by the donor of the subject of the gift with the intent to at once vest title thereto in the donee. Mere words of gift are not enough, for the owner must part with possession and control before the gift can take effect. There must be an intent to make the gift in præsenti, because a gift to take effect in futuro is void as a promise without consideration."

"An absolute gift requires a renunciation by the donor and an acquisition by the donee of all interest in, and title to, the subject of the gift." Curry v. Powers, 70 N. Y. 212, 26 Am. Rep. 577.

"There must be a delivery of possession with a view to pass a present right of property. 'Any gift of chattels which expressly reserves the use of the property to the donor for a certain period, or, as commonly appears in the cases which the courts have had occasion to pass upon, so long as the donor shall live, is ineffectual.'" Young v. Young, 80 N. Y. 422, 436, 30 Am. Rep. 634, 639.

In the case of O'Connell v. Seymour (Sup.) 53 N. Y. Supp. 748, Judge Follett, in writing the opinion of the court, says:

"He who attempts to establish title to property through a gift inter vivos, as against the estate of a decedent, takes upon himself a heavy burden, which he must support by evidence of great probative force, which clearly establishes every element of a valid gift,—that the decedent intended to devest himself of the title in favor of the donee, and accompanied his intent by a delivery of the subject-matter of the gift."

In this case there was, as hereinbefore stated, a delivery of the bank book, but it was merely a delivery of a gift which was not to take effect, and the possession of which was not to pass, until the donor's death, unless there was then expressed by him an intention to make the gift immediate or in præsenti. There must accompany the act of delivery an intention on the part of the donor to thereby devest himself of the title, and to then make the gift absolute, and

that such was the intention must be clearly established by the donee.

If such was not his intention, the gift was not effectual, for it was conditional only, and fails to satisfy the legal requirements. It must be remembered that this deposit had been made but a few moments before; they were yet in the bank; testator had just declared that he did not want the deposit in their joint names; but that he wanted it in his name, and, in the event of his death payable to Peter; and it was thus made. He seems to have been quite particular about it, and to have known definitely just what he wanted. If, when he subsequently handed the book to Peter, with the remark, "There is your book, and there is your money," his intention had suddenly undergone a change, the inquiry naturally suggests itself, what caused it? Certainly nothing had been said by either indicating any purpose to change this gift from one in futuro to one in præsenti. I am satisfied that the delivery of the pass book was intended to be a delivery merely of a gift, which was not to take effect until after the death of the testator, and was not intended as a delivery of a gift to take effect immediately. This view is further borne out by the fact that at the time of the said deposit testator's property was only about $3,500, including the said $2,000, and there is no well-defined reason shown why he should prefer his brother Peter to the extent claimed by him, and whereby his property would have been reduced to about $1,500. Testator had a son at that time living and the said grandchildren, and, so far as appears to the contrary, their relations were pleasant; in fact, he made the said grandchildren his residuary legatees. Also on the 12th day of May, 1897, the year before this alleged gift, he executed his will, which has since been admitted to probate, whereby he appointed Peter his executor, which fact may have had a bearing upon his mind at the time he made the deposit which postponed the payment to Peter until after his (testator's) death. This case must be disposed of on the theory of a gift inter vivos. No trust was created either in the bank or the testator for the benefit of Peter.

The account of the executor should be surcharged with the amount of the said deposit and interest. Let findings be prepared accordingly. Decreed accordingly.