### INDEBTEDNESS OF DECEDENT TO HOUSEKEEPER ON NOTES.

Common Pleas Court of Ashland County.

IN RE ESTATE OF J. O. JENNINGS.

Decided, February 24, 1912.

*Estates of Decedents—Promissory Notes Executed to Housekeeper Held Not to Have Been Gifts Without Consideration.*

Promissory notes for specific sums of money, payable one day after date but understood to be payable at the death of the maker, are supported by a good and valuable consideration and may be ordered paid out of the estate of the maker, where it appears that they were executed by him and delivered to his housekeeper to make good to her a reduction in her wages, made necessary by a change in his financial ability.

*Mykrantz & Patterson,* for plaintiff.
*Ford, Snyder & Tilden,* contra.

DEVOR, J.

This matter came into this court on appeal from the Probate Court of Ashland County, from an order allowing two claims of Susan Grindle, one of the executors of the estate of J. O. Jennings, deceased, against said estate. The probate court found that there is due Susan Grindle from the estate of J. O. Jennings

the sum of $1,360, as set forth in first cause of action, and $620, as set forth in second cause of action, in all, the sum of $1,980, with interest thereon from April 3, 1911, and the court ordered said amount paid by said executors out of said estate.

Notice of appeal was given by the residuary legatees under the will of J. O. Jennings, deceased, to-wit: The American Board of Commissioners of Foreign Missions, the Congregational Home Missionary Society, and the American Sunday School Union, and each of them at the time excepted to the judgment of the probate court. The bond in appeal was fixed at $100, which was duly given.

This case, therefore, was tried in common pleas court upon the application of Susan Grindle filed in probate court for the allowance of said claims and the evidence.

Susan Grindle in her application in the Probate Court of Ashland County, Ohio, sets forth two causes of action. In the first cause of action she sets up a note for $1,000, dated July 21, 1903, and due one day after date. On said note are the following indorsements:

"Note dated July 21, 1903, $1,000.00
Interest to July 21, 1909     .   360.00
                            ──────────
                            $1,360.00"
"Interest to cease on this note after July 21, 1909."

There are no credits on said note, and no other endorsements, and petitioner represents that she is the owner and holder of said note, and that there is now due and owing to her from the estate of J. O. Jennings, deceased, the sum of $1,360.

The second cause of action sets up a note calling for $500, dated April 20, 1905, due one day after date. On said note are the following endorsements:

"Note dated April 20, 1905,   $500.00
Interest to April 20, 1909,    120.00
                            ──────────
                            $620.00"
"Interest to cease after April 20, 1909."

There are no credits on said note, and no further endorsements and there is due and owing petitioner from the estate of J. O. Jennings the sum of $620.

Petitioner prays that her claims, amounting to $1,980, may be ordered paid out of the estate of J. O. Jennings, deceased.

The law of Ohio makes the following provisions in such cases. Section 10727, General Code:

"No part of the assets of the deceased shall be retained by an executor, or administrator, in satisfaction of his own debt or claim, until it has been proved to and allowed by the probate court."

Section 10728, General Code:

"When an executor or administrator presents a debt or claim to the probate court for its allowance, which he owns, against the estate he represents, amounting to fifty dollars or more, the court must fix a day not less than four weeks nor more than six weeks from its presentation, when the testimony touching it shall be heard. * * * Notice in writing to all the heirs, legatees, or devisees of the decedent interested in the estate, and such creditors as are therein named. * * * All the persons named in the order shall be parties to the proceeding, and any other person having an interest in the estate, may come in and be made a party thereto."

Section 10729, General Code:

"Exceptions may be taken to a decision of the court upon a matter of law, by any person affected thereby."

Section 10730, General Code:

"When an executor or administrator asks the allowance of a debt or claim for more than one hundred dollars against the estate of the decedent, an appeal may be taken by any person affected thereby to the common pleas court from an order or judgment of the probate court, allowing or disallowing it, or any part thereof."

Section 10731, General Code:

"In the common pleas court the matter must be tried and decided the same as if the common pleas had original jurisdiction,

as near as practicable; except that unless the court orders them, pleadings are not to be filed.''

No order was made by the court that pleadings be filed in this case. The court heard the evidence, upon the application of Susan Grindle, filed before the probate court, for the allowance of her claim. There is no issue in the pleadings made upon her application for the allowance of these claims. It is claimed, however, that these notes were gifts payable at J. O. Jennings' death and are void.

The signatures of J. O. Jennings, to these two notes, and the endorsements thereon in his handwriting were proven to be genuine, and admitted by the parties contesting the allowance of this claim.

It appears from the evidence that Susan Grindle was the housekeeper of J. O. Jennings. She lived with him from 1886 up until his death in 1911. She was paid at first for a period of time a larger salary per month for her services, which afterwards was reduced when Mr. Jennings' salary at the First National Bank, of which he was president, was reduced. In order to live within his income, he reduced her salary. She was willing to have her salary reduced at the time. It is not certain when this occurred. Her salary was reduced five dollars per month. She thought that she worked about twenty years at the reduced salary. He paid her regularly and in full for her services under the contract. She never asked to have her salary increased. She thought the note for $1,000 was given to her the next day after it was written. Her salary was paid right along while Mr. Jennings lived. She said they never had any talk about an increase of salary. She thought the $500 note might have been given to her a month after it was written. She had these notes in her possession at the time of Mr. Jennings' death. She never received any interest on them, but claims she paid the taxes.

These notes were due one day after date, but the witnesses testify that Mr. Jennings said and it was understood that they were to be paid at his death.

Now, what consideration supports these notes? Were they wholly without consideration and a mere gift? Unless these notes are supported by a consideration they are of no validity in law, and are void. No principle of law is better established than, "The gift of the maker's own note is the delivery of a promise only, and not of the thing promised, and upon the death of the maker, leaving the promise unfulfilled, the gift fails." "Such gift, being without consideration, no recovery can be had on the note, against the executor of the maker." *Starr* v. *Starr*, 9 Ohio St., 75.

"A gift requires no consideration, and depends upon no agreement, but upon the voluntary act of the donor, and is accomplished by a delivery of the subject of the gift." *Pickslay* v. *Starr*, 149 N. Y., 432.

While there are no pleadings in this case, and no answer filed, setting up a want of consideration for these notes, it is, nevertheless, the duty of Susan Grindle to prove that these notes are valid claims against the estate of J. O. Jennings. The court ought not to allow these claims unless he is convinced that they are valid claims, supported by a valuable consideration. Ordinarily the written promise of a person to pay a certain sum of money is presumed to be for a valuable consideration. This presumption, however, would not apply in proceedings of this kind, and under circumstances such as in this case.

The witness, J. F. McFadden, testified that Mr. Jennings said that these notes were given "To make up a deficiency." "He said at one time they cut his salary in the bank, and he cut Miss Grindle's salary, and this was the deficiency that he thought would make that up at his death." Another witness testified, "He said that he had promised her a certain salary, and when he grew older the bank cut his salary, and he didn't feel he could afford to pay her what he promised her, and he gave her these notes to make up what he couldn't pay her, that is, the salary that he had promised her." The applicant, Susan Grindle, testified on this subject, "When he gave me that note"—referring to the $1,000 note—"he said he was giving me that to make up the deficiency of my salary between what he had paid me and what

he was paying me then. And, he said when he gave me the $500 note that he hadn't given me enough for what services I had rendered him, and wanted to give me $500 more. He gave me these notes for services I rendered to him, taking care of him through a good many sicknesses.''

What consideration, does such evidence show, supported these notes? Susan Grindle was employed for a stipulated salary. Then, his salary at the bank was reduced, and he reduced her salary. She agreed to accept the reduction, and he gives these notes to make up the ''deficiency.'' Deficiency means a lack of something; a want; an inadequacy; not sufficient. If Susan Grindle had agreed to work for a certain sum per month could there be a deficiency in her salary?

A contract for services at a specified sum per month can surely be modified or changed by the agreement of the parties, at any time they desire to do so. The services are certainly a valuable consideration for a promise to pay. No one is a better judge of the value of services than the employer, and there is nothing more reasonable than a sensible recognition of such services, by a proper and just compensation for the same, and one way to do so is to pay more than the contract calls for. Holding to the strict letter of the contract, like a Shylock, is not justice, and is sometimes not honest.

Whether Susan Grindle earned any more than J. O. Jennings was paying her the evidence does not show, but it is not particular. J. O. Jennings believed he was not paying her enough for her services, and only because his salary was reduced is the reason he reduced her salary. The consideration for these notes were valuable services as a housekeeper, rendered to J. O. Jennings. He was the best judge of the value of those services. He recognized that her services were worth more, and he surely had a right to pay her more. It was his property. He worked for his money and he had a right to spend it as appeared to him proper. Twenty years equals 240 months and at five dollars a month equals $1,200.

In his will, J. O. Jennings devised to Susan Grindle his homestead property, all his household goods and personal property in

and about the house, also $1,000 in money. "All this is given in addition to what I have heretofore paid her, to remunerate her for long devoted faithfulness as my housekeeper." This will bears date of August 5, 1903, a short time after the date of the $1,000 note. There is no evidence to show that J. O. Jennings intended this provision in his will to take the place of these notes or either one of them.

Two cases of similar nature have been found by the court, and in each of these cases the court found that the note and check were supported by a valuable consideration, and the claims were allowed. In the case of *Barthe* v. *Lacroix*, 29 La. Ann., 326, the court say:

"We have read all the evidence in this case carefully, and the conclusion we have reached is that the deceased, Lacroix, being without family, and believing that plaintiff had served him long and faithfully, at very small wages, felt that he was a under a moral obligation to remunerate him beyond his wages, and executed this $500 note for that purpose.

"In one sense it was gratuity, *i. e.*, he was under no legal obligation to do so. In another sense, it was the fulfillment of a natural obligation. We think that there was a good and valid consideration for the note. Under this view, it becomes necessary to pass upon the questions raised as to the validity of donations, disguised under the form of onerous contracts."

In the case of *Cox* v. *Walker*, 140 Ky., 172, the court say:

"There is some evidence that Mrs. Cox paid appellee three dollars a week as fixed compensation for her services, but this circumstance can not be allowed to outweigh the positive statements of Mrs. Cox that she intended to and had given appellee as compensation for her services $1,000, when coupled with the fact that her services were worth this sum. A careful reading of the record convinces us that the check was given to appellee as compensation for services rendered by her, and so the judgment is affirmed."

So, the finding of the court is, that these notes of Susan Grindle against the estate of J. O. Jennings, deceased, are supported by good and valuable considerations, and that they should be allowed, and paid out of said estate.

Judgment entered allowing said claims, and the costs of these proceedings to be paid by the executors of said estate. Exceptions may be noted.