### BAYLEY v. BAYLEY.

(Supreme Court, Appellate Division, First Department. December 2, 1910.)

1. GIFTS (§ 27*)—INTER VIVOS—CERTIFICATES OF STOCK.
   Where a husband, pursuant to his deceased wife's wishes, renounced his right to administer her estate, requested letters of administration to be granted to a son, joined in his bond, and consented to the surrender of stock certificates standing in his deceased wife's name and the issuance and delivery of new certificates to his children, his acts constituted a gift by him of such certificates, to which he was entitled as distributee of the wife's estate.
   [Ed. Note.—For other cases, see Gifts, Dec. Dig. § 27.*]

2. JUDGMENT (§ 707*)—CONCLUSIVENESS—PERSONS CONCLUDED—PERSONS NOT PARTIES.
   A child to whom a father had theretofore given stock, which was a part of the wife's estate at her death, was not bound by a judgment charging the mother's administrator with the value thereof in an action against him by the father, to which such child was not a party.
   [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1230; Dec. Dig. § 707.*]

3. EVIDENCE (§ 589*)—WEIGHT—TESTIMONY OF PARTY.
   In an action to compel an administrator of plaintiff's wife to account for stock, as a part of her estate, which plaintiff had theretofore consented should be delivered to the children, the court was not bound to accept testimony of plaintiff that he did not know, when he gave the stock to the children, that he was the sole distributee of his wife, even if he could avoid the gift on his assertion of ignorance of the law.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2438; Dec. Dig. § 589.*]

4. GIFTS (§ 41*)—RESCISSION—MISTAKE OF LAW.
   One desiring to rescind a gift made under mistake as to his legal right to the property was bound to act promptly upon learning of such mistake.
   [Ed. Note.—For other cases, see Gifts, Cent. Dig. § 20; Dec. Dig. § 41.*]

5. GIFTS (§ 41*)—RESCISSION—PERSON ENTITLED—DONOR.
   If a gift of stock by the sole distributee thereof, made under a mistake of law as to his rights, could be rescinded on that ground, he alone could do so, and the administrator of intestate's estate was not entitled to rescind.
   [Ed. Note.—For other cases, see Gifts, Cent. Dig. § 20; Dec. Dig. § 41.*]

6. EXECUTORS AND ADMINISTRATORS (§ 308*)—DISTRIBUTION OF ESTATE—RECOVERING PROPERTY WRONGFULLY DISTRIBUTED.
   An action to hold an administrator liable for wrongfully distributing the assets of the estate would not be inconsistent with the recovery of such assets or their value from the distributee.
   [Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 308.*]

7. GIFTS (§ 40*)—INTER VIVOS—RATIFICATION.
   Even if a gift made by the donor under a mistake as to his legal right to the property could be rescinded by him, his acquiescence therein until his death and for five years after learning his mistake ratified the gift.
   [Ed. Note.—For other cases, see Gifts, Cent. Dig. § 19; Dec. Dig. § 40.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Sarah Bayley, as administratrix, against Joseph Bayley. From an order setting aside a verdict for defendant and directing a new trial, defendant appeals. Reversed. Verdict reinstated, and judgment directed for defendant, on verdict.

See, also, 134 App. Div. 951, 118 N. Y. Supp. 1094.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, DOWLING, and LAUGHLIN, JJ.

A. P. Bachman, for appellant.
Henry Fletcher, for respondent.

MILLER, J.  I do not think that adverse possession of personal property can give title, unless, in fact, the action to recover it, or its value, is barred by the statute of limitations; but the direction of the verdict for the defendant may be sustained on other grounds.  Both sides having moved, the facts were for the court, and the undisputed evidence shows a gift inter vivos in 1895 by Joseph Bayley, Sr., to his three children.  For the purpose of carrying out the wishes of his deceased wife, he renounced the right to administration, requested that letters be granted to William, and joined in the latter's undertaking for the faithful discharge of his duties as administrator, and thereupon consented to the surrender of the certificates for the 21 shares of stock standing in the name of the mother, and the issuance of three new certificates in the names of the three children respectively and the delivery of them accordingly.  Every requirement of a gift inter vivos was thus satisfied.  Pickslay v. Starr, 149 N. Y. 432, 44 N. E. 163, 32 L. R. A. 703, 52 Am. St. Rep. 740; Haviland v. Willets, 141 N. Y. 35–52, 35 N. E. 958; Adams v. Brackett, 5 Metc. (Mass.) 280; Matthews v. Hoagland, 48 N. J. Eq. 456–466, 21 Atl. 1054.  The case is one not merely of tacit consent, but of active participation and actual assent, and it seems to me that it would be no stronger if the father himself had physically received and delivered the certificates. Seven years later, to wit, in 1902, the father sought to compel William to account as administrator in the Orphans' court of New Jersey, and the result of that proceeding was that William was charged with the value of said shares and directed to pay over that amount to the father.  See Bayley's Case, 67 N. J. Eq. 566, 59 Atl. 215.  The defendant, however, was not a party to that proceeding and consequently is not bound by the decree.  It appears from the opinion of the Prerogative Court that the father's claim was that he consented to the division among the children upon the representation by William that the mother had given the shares to the children and in ignorance of the facts upon which the claim of gift was based; and, upon that theory, the decision went in his favor.  It now appears, however, from the undisputed evidence, that he had knowledge of all the facts, and the inference is irresistible that he renounced his right to administration and authorized William to make the division for the purpose of carrying out the wishes of his deceased wife, and seven years later repented of his act because of family dissension.  .

It appears that the father testified in the proceeding in the orphans' court of New Jersey that he did not know that, under the law of New Jersey, he was the sole distributee of his wife, until he was so informed in 1902. That testimony would not have been admissible if objected to; and, even if he could avoid the gift seven years after it was made upon his assertion of ignorance of the law, the court was not bound to accept his testimony in face of the fact that he actually renounced his right to administration and actively participated in what was done.

Moreover, if he wished to rescind the transaction upon learning his mistake of law, it was his duty to act promptly (Haviland v. Willetts, supra); and, while he sought to compel William to account as administrator, so far as appears, he made no demand upon the defendant and no effort whatever to rescind the transaction as to him. Meanwhile, the defendant invested the proceeds of the shares in real estate, which, his testimony shows, is now worth less than one quarter of its value when the investment was made.

The plaintiff sues as administrator to recover the value of property of her intestate delivered to the defendant by her predecessor with the consent of the sole distributee under the statute. The latter alone, if anybody, could rescind the transaction, and, so far as the defendant is concerned, he died without ever having done so. The plaintiff certainly can have no better right than the one for whose benefit the action is maintained, to wit, herself individually as legatee of her father. The father, in the proceeding against William, obtained a decree upon what now appears to have been an erroneous finding, i. e., that the latter had wrongfully distributed the assets of the estate; but that decree, so far from aiding the plaintiff in this suit, might be an embarrassment. No doubt the attempt to hold an administrator responsible for wrongfully distributing the assets of the estate would not be inconsistent with an attempt to recover said assets, or the value thereof, from his distributees. Russell v. McCall, 141 N. Y. 437–456, 36 N. E. 498, 38 Am. St. Rep. 807. Both actions would be for the same wrong. But, upon this record, no wrong was committed. At most, the father had the right to rescind the transaction upon discovering his mistake of law, and it is by no means plain that, upon rescinding, he could maintain successive actions against the administrator and the latter's distributees. Indeed, it would seem that all should be made parties in one action, and these equitable considerations should determine the relief granted. However, it is unnecessary to pass upon these questions, as it is plain that the transaction was never rescinded as to the defendant, but, on the contrary, was ratified.

When the defendant received the shares of stock in 1895, he had no reason to suspect that he had thereby incurred an obligation to account for any value which the shares might thereafter attain. When he sold the shares in 1900, and, as the evidence shows, was congratulated by his father for what the latter termed "a good Christmas present," he still had no reason to suspect that he was to be held accountable for the proceeds; and we think that, even if the original gift could have been rescinded by the father, his acquiescence until

his death and for at least five years after learning his mistake of law amounts to a ratification. Haviland v. Willetts, supra.

Order reversed, with costs, and verdict reinstated, and judgment ordered for defendant on the verdict.

INGRAHAM, P. J., and McLAUGHLIN and DOWLING, JJ., concur.

LAUGHLIN, J. The action is brought by the administratrix of Mary E. Bayley, deceased, to recover the sum of $2,985.50, together with interest thereon from the 4th day of January, 1901, being the amount received by the defendant as the proceeds of the sale of seven shares of the Pennsylvania Coal Company stock on said day and dividends received on said stock. The theory of the action is that the stock belonged to plaintiff's intestate, who died at East Orange, N. J., on November 22, 1894. Letters of administration on her estate were issued here. At the time of her death she had in her possession 21 shares of the stock of this company, one certificate for 20 shares and one for one share. She left, her surviving, her husband, Joseph Bayley, Sr., and three children, the plaintiff, the defendant, and William Bayley. By consent of the husband and the children, William Bayley was originally appointed administrator of her estate. He was subsequently removed and the plaintiff appointed.

Under the law of New Jersey it appears that the husband is entitled to letters of administration on the estate of his wife and to all of her personal property. The plaintiff testified that in 1892, about two years before her mother died, there was a conversation between her mother and herself and her brothers and her father about the division of the 21 shares of stock, in which her mother stated, in substance, that she wanted the stock divided among the three children equally; that, on the morning after her mother's death, she took the certificates of stock from a wooden box in which her mother kept them and delivered them to her brother William, who thereafter informed her that he had surrendered them to the company and obtained three certificates for seven shares each, one to the defendant, one to the plaintiff and one to himself, and that in February, 1896, he delivered to her one certificate for seven shares which she subsequently sold; that her father consented to this division; that she was the executrix of her father; and that she only was interested in the action and would be entitled to any recovery herein. This evidence is uncontroverted and was corroborated by the testimony of her brother. It further appears by the undisputed evidence that the 21 shares of stock which stood in the name of Mary E. Bayley at the time of her death were transferred on the books of the company on the 19th day of February, 1895, and three certificates issued in place thereof, one for seven shares to the plaintiff, another for seven shares to William Bayley, and another for seven shares to the defendant, and that the certificate for seven shares was delivered to the defendant, and he retained it until January 4, 1909, when he sold it for the amount stated. The husband of the decedent testified on an action or proceeding in the Essex county orphans' court, N. J., to compel Wil-

liam as administrator to account, in effect that he was not aware of his rights until after the stock was sold by defendant, and that he supposed that the stock belonged to the children. He died on the 18th of August, 1907. This action was commenced on the 26th day of May, 1909.

The uncontroverted evidence shows that from the time the defendant received the certificate of stock in February, 1895, to the knowledge and with the acquiescence of his father, he retained the same and the proceeds thereof under the sale with like knowledge and acquiescence, as his individual property under an open, notorious, and undisputed claim of right; and the answer sets up the facts with respect to the division of the stock on the direction of his mother with the consent of his father, and pleads the statute of limitations of six years prescribed by the statute law of New Jersey as a bar to an action for trespass, trover, detinue, or replevin. On the trial evidence with respect to the residence of the defendant since the time he received the stock was introduced in behalf of both parties. It was contended on the part of the plaintiff that after receiving the stock the defendant departed from the state of New Jersey and was not a resident thereof in the sense that process could be served upon him within the state, and on the part of the defendant it was claimed that, although he was absent from the state from time to time for a considerable period, he retained his residence at the family home in New Jersey. The verdict was set aside and a new trial granted on the theory, as shown by the opinion of the learned trial justice, that the defendant after selling the stock did not remain a resident of New Jersey in the sense that service of process could have been made upon him as a resident, and that therefore the statute of limitations has not run against this action to recover the proceeds of the sale of the stock.

I do not deem it necessary to express an opinion on the point on which the trial justice set aside the verdict and granted the new trial, for I think it is clearly shown by the record that the statute of limitations of New Jersey would have been a bar to an action for the recovery of the stock at the time this action was commenced, and that the defendant has obtained good title to the stock and to the proceeds thereof by adverse possession. There is no evidence of fraud. The possession was obtained under a claim of right to the knowledge and with the acquiescence of the defendant's father, who may not have been aware of his legal rights; but his ignorance of the law has no bearing on the question in these circumstances. The evidence clearly shows that the defendant, at the time of the death of his mother and of the division of the stock in February, 1895, resided at the family home in New Jersey, and that he did not change his residence until the month of July, 1902. His father was aware of this fact, for he resided there during all of that time. In Lightfoot v. Davis, 198 N. Y. 261, 91 N. E. 582, it was held that title to personal property may be acquired by adverse possession for a period which under the statute of limitations would bar an action for its recovery where such possession is under a claim of right and has been open, notorious, and undisturbed. If the defendant had not acquired good title by adverse possession when he sold the stock, good title had thus

been acquired before the action was commenced; and if the plaintiff could not have recovered the stock when she brought this action, had the defendant still retained it, she cannot recover the proceeds of the sale, for the same rule would give defendant title to such proceeds which he also held claiming adversely because the statute which had commenced to run against an action to recover the property continued to run notwithstanding the sale of the property, and, like the property itself, the proceeds of the sale ceases to belong to the plaintiff before this action was commenced. Lightfoot v. Davis, supra, at page 264 of 198 N. Y., at page 583 of 91 N. E. In Lightfoot v. Davis, supra, Chief Justice Cullen, writing for a unanimous court, in deciding this point of law in an action for an accounting for the proceeds of a sale of certain bonds, said:

"The first question to be considered is whether the lapse of time would have vested a good title in the defendant's testator had he remained in possession of the bonds until the time of his decease, for, if such is the law, it is clear that he did not become liable because, instead of retaining the bonds, he collected the money due thereon."

The facts material to a decision of the case on this theory were sufficiently pleaded in the answer and were established by the evidence as matter of law.

I am therefore of the opinion that the action cannot be maintained, and that the learned trial justice erred in setting aside the verdict and granting a new trial, and I vote for a reversal of the order and a reinstatement of the verdict.