ORTH et al. v. KAESCHE et al.   (No. 6567.)

(Supreme Court, Appellate Division, First Department.   December 31, 1914.)

1. WILLS (§ 712*) — EXECUTION — WITNESSES — LEGATEES — PROOF — AVOIDANCE OF LEGACY.

Where two legatees were the sole witnesses to a will, and the will was proved by their testimony and could not have been proved without it, their legacies were avoided, as provided by Decedent Estate Law (Consol. Laws, c. 13) § 27.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1693, 1694; Dec. Dig. § 712.*]

2. EXECUTORS AND ADMINISTRATORS (§ 288*)—CONTRACT OF LEGATEES—VALIDITY—EXECUTION BY MISTAKE.

Legacies to witnesses to a will having been rendered void by proof of the will by the witnesses' testimony, two foreign legatees unfamiliar with the American law were induced to execute contracts under seal directing the executors to pay the legacies to such witnesses on the false representation that, unless the instruments were executed, the will, under the American law, would be wholly invalid, and the property would be distributed as in case of intestacy. *Held,* that such contracts were the result of a material mistake of fact, induced by the erroneous statement as to the fact by the agent of the party to be benefited by the instrument, and were therefore voidable.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1136–1148; Dec. Dig. § 288.*]

3. GIFTS (§ 41*)—REVOCATION.

Where certain legatees acted as the sole witnesses to a will, and their legacies were rendered void because of their testimony, whereupon certain other foreign legatees, by misrepresentations as to the American law, were induced to sign instruments under seal directing the executors to pay the legacies to the witnesses, who were not parties thereto, such instruments, not being an assignment of anything nor based on a consideration flowing from the witness legatees, were mere voluntary orders on the executors, with an assignment to them of a sufficient amount out of the shares of the legatees executing the instruments to make the payment; and hence such instruments, before being acted upon, were revocable.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 20; Dec. Dig. § 41.*]

Hotchkiss and Laughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Paul Orth and others against Max B. Kaesche and another, as executors of the will of Alfred Orth, deceased, and others. From a judgment dismissing the complaint on the merits, plaintiffs appeal. Reversed, and judgment directed for plaintiffs.

Argued before CLARKE, McLAUGHLIN, LAUGHLIN, SCOTT, and HOTCHKISS, JJ.

James F. Donnelly, of New York City, for appellants.
Bernhard Bloch, of New York City, for respondents.

SCOTT, J.   The purpose of this action is to obtain a judgment canceling and annulling two certain instruments executed by the plaintiff Paul Orth and by Carl Orth, the deceased father of the plaintiffs Carl B. Orth and Louisa A. Seufferheld.

---

The following are the facts: On or about April 9, 1905, one Alfred Orth, a resident of this state, died at Woodhaven, Queens county, leaving a last will and testament dated on or about August 4, 1904. This will was duly admitted to probate on June 15, 1905, and the defendants Max B. Kaesche and Frank H. Wasel were duly appointed executors. The estate involved amounts to upwards of $20,000. By his will the testator bequeathed to his two brothers Carl and Paul Orth, of Heilbronn, Germany, a sum of money amounting to about $14,000, then on deposit with a certain firm. He made several specific bequests, among which was a bequest to the defendant Catharina Wasel of a mortgage on property in Brooklyn, out of which she was to pay the defendant Gertrude Miethe the sum of $1,500, which sum was bequeathed to said Gertrude. Catharina Wasel and Gertrude Miethe were the sole witnesses to the will.

[1] It was by means of their testimony that the will was proved, and without their testimony it could not have been proved. This avoided the legacies to them. Decedent Estate Law, § 27.

After the probate of the will, the said legatees, or some one acting in their interest, caused to be prepared the two instruments which are the objects of attack in this action. These instruments were identical in form, except as to the name of the party of the first part thereto, and a description of the one afterwards executed by plaintiff Paul Orth will serve as a description of both. This instrument recited that it was made on June 7, 1906, between Paul Orth, of Heilbronn, Germany, party of the first part, and Max Kaesche and Frank Wasel, as executors of the last will and testament of Alfred Orth, late of Woodhaven, etc., parties of the second part. It recited that Alfred Orth died leaving a last will and testament which had been duly proved and letters testamentary issued to said parties of the second part. It further recited the provisions of the will in favor of Carl and Paul Orth and Catharina Wasel and Gertrude Miethe; that the said beneficiaries Mrs. C. Wasel and Mrs. Gertrude Miethe "signed said will as witnesses, and by so doing are precluded from receiving the legacies bequeathed to them by the said Alfred Orth, and the parties of the second part (the executors) have been advised, by their counsel learned in the law, that payment of said legacies cannot be made by them without consent of the next of kin and heirs at law of said Alfred Orth. It was further recited that the party of the first part was desirous of carrying out the wishes of said testator as expressed in said last will and testament, and of securing to the said Mrs. C. Wasel and the said Mrs. Gertrude Miethe payment of the legacies to them bequeathed. The instrument then proceeded as follows:

"Now, therefore, I, Paul Orth, brother, and one of the next of kin and heirs at law of said Alfred Orth, deceased, do hereby in consideration of the sum of one dollar to me paid by the parties of the second part and for the purpose of rendering effective the legacies bequeathed by the said Alfred Orth to Mrs. C. Wasel and Mrs. Gertrude Miethe hereby consent to the payment of said legacies by the said executors, the parties of the second part to the said legatees above named, and for the purpose of enabling the said parties of the second part to make such payment I hereby assign, transfer and set over to the said parties of the second part such amount of my share in said estate as will be the proportionate part thereof, necessary for

the payment of said legacies and I for myself and my heirs, executors and administrators, do hereby release and discharge the said executors, the parties of the second part, from all liability they or either of them, their successors or assigns, may sustain by reason of the payment of the said legacies as directed by the provisions of said last will and testament of said Alfred Orth."

These two documents were sent to Gerhard Luyties, who resided at Stuttgart, Germany, with a view to obtaining their execution by Paul and Carl Orth. Luyties procured such execution under circumstances hereinafter referred to, and returned the documents to one Julius H. Wasel, a son of Catharina Wasel, who, in turn, delivered them to the executors. The said executors have never acted upon said documents by paying the sums therein specified to Catharina Wasel and Gertrude Miethe, but in January, 1910, in the course of an accounting proceeding before the surrogate of Queens county filed said documents in the Surrogate's Court. The decree originally entered in said accounting proceeding provided for payment to Catharina Wasel and Gertrude Miethe, but before such payment had been made, upon application of these plaintiffs, said degree was amended by striking out the provision for payment to said Wasel and Miethe, and inserting a provision that the sum of $4,250 should be paid into the Queens County Trust Company—

"to await the final determination of an action to be begun in the New York Supreme Court within 30 days after the entry of this order by Paul Orth and the legal representatives of Carl Orth against Gertrude Miethe and Catharina Wasel and others, to determine the validity of the assignments and to set aside the assignments from Carl Orth and Paul Orth to Max B. Kaesche and Frank H. Wasel, as executors, under the last will and testament of Alfred Orth, deceased, on the ground that they are without consideration, and on the further ground that Gertrude Miethe and Catharina Wasel are not privy to them and cannot take advantage of any provisions therein, and on the ground that the said assignments are not for the benefit of the said Catharina Wasel and Gertrude Miethe, and are not binding upon the legal representatives of Carl Orth, deceased, and on the further ground that the said assignments are invalid for fraud, and on such other grounds as may properly be advanced against the sufficiency of the said assignments."

It was further provided in said amended decree:

"That the striking out of the provisions for the payment of the money herein to Gertrude Miethe and Catharina Wasel be without prejudice to the rights in the action to be begun in the Supreme Court, as well as without prejudice to the rights of Paul Orth and the legal representatives of Carl Orth in such actions; it being the intention of this court to leave the entire matter with reference to the rights of said parties under said assignments to be determined in the Supreme Court as if the matter had not arisen in the Surrogate's Court."

Thereupon the present action was begun. The executors of Alfred Orth, deceased, take no part in the controversy and make no claim under the disputed documents. The circumstances attending the execution of the documents are detailed in the deposition of Paul Orth and Gerhard Luyties, who do not disagree in any important particular.

Paul Orth, who in June, 1913, was 65 years of age, was a retired magistrate. He was able to speak and write the English language, how fluently or accurately does not appear. Carl Orth, the brother, could

neither speak nor read English.  Gerhard Luyties, whose deposition was read in behalf of the defendants after stating that a friendship had existed between himself and Catharina Wasel and her son, and that they had asked him to procure the execution of the documents by Paul and Carl Orth, testified, in substance, that it was his belief and opinion that the will was rendered invalid by reason of the fact that Catharina Wasel, one of the witnesess thereto, was a relative of the testator, and that he so stated to the two Orths; that he explained to said Orths that according to American law it was not permitted that a relative sign a testament as witness; probably also for this reason the testament of Alfred Orth was invalid and that therefore their consent was necessary to carry out the testament; that he told Paul and Carl Orth that the testament of the deceased Alfred Orth would be invalid in case they did not sign the papers Exhibit A and Exhibit B (the documents in dispute); that he told Paul Orth and Carl Orth that the testament of the deceased, Alfred Orth, could not be admitted to probate if papers Exhibit A and Exhibit B were not signed by them.

[2] Without quoting further, it suffices to say that it is entirely apparent, from the testimony of this witness, as well as that of Paul Orth, that the brothers Orth were induced to sign the instruments solely because they were told by Luyties and believed that under our law the will would be wholly invalid and the property distributed as in case of intestacy, if they did not execute the documents then presented for their signature.  This, of course, was erroneous, and their mistake, being with respect to the law of a foreign country, was a mistake of fact. Curtis v. Leavitt, 15 N. Y. 9–193; Vinal v. Continental Const. & Imp. Co., 53 Hun, 247, 6 N. Y. Supp. 595.

We have therefore the case of an agreement not yet acted upon, which was executed under a material mistake of fact induced by the erroneous statement as to that fact by the agent of the party to be benefited by the instrument.  This is ample ground for a rescission, and it matters not whether Luyties intentionally or innocently made the misstatements of fact.  If he did so intentionally, the transaction is tainted with fraud.  If he did so innocently, believing that the law in this country was as he stated it, still the Orths, if they believed his statements and relied upon them, as they clearly did, were and are entitled to a rescission so long as the document remains executory, for it is well settled that courts of equity may rescind an apparent contract for the mistake of one party only, without finding fraud or inequitable conduct in the other.  Harper v. City of Newburgh, 159 App. Div. 695, 145 N. Y. Supp. 59; Silverman v. Minsky, 109 App. Div. 1, 95 N. Y. Supp. 661; Goodman v. Laborn, 11 App. Div. 617, 42 N. Y. Supp. 166; Crowe v. Lewin, 95 N. Y. 423.  The true rule is thus stated in Kerr on Fraud and Mistake, p. 3:

"It is essential to bear in mind that an action of deceit differs essentially from one brought to obtain rescission of a contract on the ground of misrepresentation of a material fact.  The principles which govern the two actions differ widely.  Where rescission is claimed it is only necessary that there was misrepresentation.  Then however honestly it may have been made, however free from blame the person who made it, the contract, having been obtained by misrepresentation, cannot stand.  In an action of deceit on

the contrary, it is not enough to establish misrepresentation alone, for without proof of fraud no action of deceit is maintainable."

There is therefore ample ground for rescinding the agreements without imputing to Gerhard Luyties fraud or intentional misrepresentation.

[3] There is still another reason why the plaintiffs are entitled to a judgment of rescission. The defendants Catharina Wasel and Gertrude Miethe were not parties to the instruments which are under seal; there is no assignment of anything to them; and no consideration flowed from them, not even a moral consideration based upon their sacrifice of their legacies by reason of their testifying to establish the will, for under the statute they could have been compelled to testify. All that we have, therefore, is a voluntary order upon the executors to pay certain sums of money to the legatees Wasel and Miethe, with an assignment to the executors of a sufficient amount out of the shares of the two others to make the payment. This assignment of course carried nothing to the executors, unless they make the payment, and they claim nothing under it.

If they had made the payments before the attempted revocation of the documents, they would doubtless have been protected. But, until the executors acted upon by making payments thereunder, it remained open to the Orths, for any reason they chose, to revoke their authorization. Clearly there was no gift to the legatees Wasel and Miethe, for nothing was ever delivered to them and no agreement ever made with them. Although couched in formal phrase and embellished with seals, the documents were nothing more than orders upon the executors to make payment of the plaintiffs' money to persons to whom the plaintiffs owed nothing. Such an order was subject to revocation at any time before it had been complied with. Upon both grounds above stated the plaintiffs were entitled to recover, and the judgment against them was erroneous.

The judgment appealed from must therefore be reversed, and judgment directed in favor of the plaintiffs, with costs in this court and the court below. A decision embracing such additional findings as are deemed necessary and a form of judgment may be presented for settlement upon notice.

McLAUGHLIN and CLARKE, JJ., concur.

HOTCHKISS, J. I am unable to concur in the reversal of this judgment. I think it is not only in accord with the evidence and the law, but also that it is manifestly just. The test of our jurisdiction is, not what we would have done had we been sitting in the place of the trial court, but whether the judgment appealed from is supported by the facts and is in conformity to law. Whether the instruments may be avoided on the ground either of unilateral mistake or fraud depends upon (1) whether the Orths relied on what Luyties said; and (2) whether in law they had the right to rely on it. The court below found that, when the two Orths executed the instruments in question, they were fully aware of their contents, and the learned court refused to find

that, in attaching their signatures to such instruments, the Orths relied on anything that was said to them by Luyties. This is equivalent to an affirmative finding that the Orths did not rely on what Luyties told them. To succeed on this appeal, it is necessary for the appellants to show that this finding is either without evidence to support it, is against the weight of evidence, or that the instruments are in and of themselves ineffectual to invest the respondents with title to the interests in dispute.

First, as to the finding of fact. That the two Orths knew the contents of the papers they severally signed can scarcely be disputed. Paul, the survivor, testified that he and the deceased, Carl, in response to a letter from Luyties, went from their home in Heilbronn to Stuttgart and called upon Luyties at his residence, where the conference with reference to the instruments took place between the three men, and that, as the result of this conference, the three proceeded to the office of the United States vice consul, where the papers were severally executed by the Orths and, as so executed, were delivered to Luyties. From the testimony of both Paul and Luyties, it is to be inferred that these two and Carl were together from the beginning of the conference until the papers were executed. Paul also testified that the two papers were read aloud (presumably in the hearing of both of the Orths) "either in English or in German translation." Paul spoke and wrote English, but Carl understood German only. Of himself, Paul admitted: "I had obtained a perfect knowledge of its (the paper's) entire contents." That Carl's knowledge was of equal degree can scarcely be doubted, as it is not at all probable, assuming the paper was not fully translated to him, that his brother Paul, the interest of the two being identical, did not afford him (Carl) the benefit of his (Paul's) superior intelligence. In the case of the ordinary adult plaintiff, this state of facts might safely be taken as evidence that the parties not only knew the words composing the text, but as well that they comprehended the import thereof. I see nothing to overcome a similar presumption in this case. On the contrary, as I view them, the facts strengthen it. Both Orths were men of mature years and are shown to have been of superior education. Paul was a retired magistrate, and appears to have had a knowledge of law sufficient to enable him to discriminate between certain of Luyties' statements as to the legal status of the will and others which to Paul seemed improbable, because Paul says that although he believed Luyties' statement that, because two relatives of the testator had signed the will as witnesses, the will was thereby wholly voided, he placed no credence in Luyties' further statement that, the will being invalid, the testator's property would escheat to the state, for, as he says, "I believed the legal right to succession would set in."

Read in the light of this situation, the instruments sought to be avoided contain in themselves persuasive evidence that the two Orths fully comprehended their true import and quite sufficient proof to have justified the trial court in refusing to find that either of the Orths relied on Luyties' statement of the legal effect upon the will resulting from the fact that it was witnessed as above set forth. The two

instruments are in identical form, except as to parties and signatures. They recite:

The death of Alfred, the testator, "leaving a last will and testament, * * * which said will has been duly proved by the surrogate of said Queens county and letters testamentary have been duly issued * * * and are now in full force and virtue"; that "the said beneficiaries Mrs. C. Wasel and Mrs. Gertrude Miethe signed said will as witnesses, and by so doing are precluded from receiving the legacies bequeathed to them by the said Alfred," and that the executors have been advised by counsel that they may not pay said legacies "without consent of the next of kin and heirs at law of the said Alfred"; that "the party of the first part (Orth) is desirous of carrying out the wishes of the said testator as expressed in said last will and testament and of securing to the said Mrs. C. Wasel and the said Mrs. Gertrude Miethe payment of the legacies to them bequeathed. Now, therefore, I, * * * for the purpose of rendering effective the legacies bequeathed by the said Alfred, * * * do hereby consent to the payment of said legacies, * * * and for the purpose of enabling the said parties of the second part (executors) to make such payment I hereby assign * * * to the said [executors] such amount of my share in said estate as will be proportionate part (sic) thereof necessary for the payment of said legacies."

Could language be clearer? On the face of these formal papers the parties are notified that the will has been "duly proved"; that letters testamentary "are now in full force"; that because of having witnessed the will, what? Is the will itself void? No, merely that the two legatees are precluded from receiving "their legacies." Nevertheless, it is the "purpose" of the Orths to render them "effective." Who was Luyties, that this retired magistrate and his brother should accept his opinion on a question of American law? He describes himself as a "merchant." Presumably he had no knowledge of the law of this state, and his erroneous views concerning it strengthen this presumption of ignorance. Moreover, his conference with the Orths occurred on June 7, 1906, some seven years before the deposition of Paul was taken, a period quite sufficient to have enfeebled the latter's recollection and, what is more to the point, to have stimulated his acquisitiveness, and so to have easily led up to a state of mind on his part, where he was ready to affirm with confidence his reliance on Luyties. I find in the deposition of Paul further evidence to justify a refusal to accept his statement às to the extent to which he relied on what Luyties told him of the law. He says:

"I never thought of the possibility that by signing this [the instrument] I could obligate myself towards Gertrude Miethe and Catharina Wasel to pay to them the entire or any part of the legacies which they were to receive. * * * I never conceived of the possibility that these legacies were to be taken from my and Carl Orth's share of the estate, * * * but conceived * * * that these legacies would be paid from the entire estate by the executor in advance. I never thought that Carl and I would obligate ourselves by these signatures to carry out the two legacies named in any way at our expense."

May not the foregoing afford the key to the present action? Is it not probable that, when the two Orths, or Paul, the survivor, on reflection recalled that the legacies were to be paid from the Orths' portion of the estate alone, disappointment over the diminished returns led to his giving an exaggerated importance to the witless statement of Luy-

ties concerning the law? On the whole, must we accept Paul's present testimony, to the effect on his mind seven years before of what Luyties told him, as sufficient to overturn a finding based upon so many circumstances contradicting it?

Second. On this record, I am prepared to go further than did the trial court, and to find, not only that the Orths did not rely on what Luyties told them, but also to hold as matter of law, and notwithstanding the rule of ratification or adoption, they had no right to rely on it. By this latter rule, one who knowingly appropriates or enjoys the fruits of another's act will not afterwards, ordinarily, be heard to say that the act was unauthorized. But does this rule apply in a case of representations repugnant to the express terms of an instrument sought to be avoided, and where he who invokes the rule has notice of a lack of authority to make the representations relied upon, not by his adversary, but by him? Of this rule, Mr. Meecham in his work on Agency (2d Ed.) § 435, says:

"Like all other general rules, however, this is one which must be received with caution, and applied with discrimination, for it is perfectly clear that there are many cases in which one may receive a benefit without incurring any obligation either to return or to pay for it."

In Quinlan v. Prov. Washn. Ins. Co., 133 N. Y. 356, 31 N. E. 31, 28 Am. St. Rep. 645, Judge Andrews said:

"No principle is better settled in the law, nor is there any founded on more obvious justice, than that if a person dealing with an agent knows that he is acting under a circumscribed and limited authority, and that his act is outside of and transcends the authority conferred, the principal is not bound, and it is immaterial whether the agent is a general or special one."

I concede that these words were used in a case involving the question of an agent's authority, and not a question of ratification or adoption, but their logic is, I think, equally applicable to a situation where the latter only is involved, in circumstances similar to the present. So far as this record discloses, Luyties was but a messenger to whom the papers were sent to be presented to the Orths for signature. As a merchant, and particularly as a foreign merchant, the Orths had no reason to believe that Luyties knew or had been asked to convey any information about the law of this state or that anything he might say on that subject came from the lips of other than an ignorant and uninstructed volunteer. Suppose that, by the hands of an ignorant messenger, A. sends to B., an Assyrian scholar, a communication couched in cuneiform characters, would any one say, not merely that he in fact did, but as well that in law B. had a right to, rely on any interpretation of the characters the messenger might be pleased to give, and no matter how contradictory it might be to the plain statement of the characters themselves. Analyzed in the light of legal principles, we would find: (1) The messenger would be presumed to have acted, not for A., but solely on his own account; as to B., his acts would be inter alios acta. (2) B. would be presumed to have dealt with the messenger in his individual capacity, and not as representing A. Story on Agency (7th Ed.) § 251a. The situation is quite different from one where a contract which is sought to be enforced was itself negotiated or pro-

cured by him whose acts are repudiated. In such case, the rule of ratification or adoption applies. Here, as I show hereafter, we have a case of consummated gift, and one which the donors seek to avoid because of the acts of one whom I regard as a stranger, a mere volunteer, having, as to the phase of the matter now under discussion, no legal relation to the donor. True, the transfers from the Orths involved no consideration, but that of itself is not sufficient to entitle the donor to rescind for mistake induced by the act of a stranger. The interests described in the assignments were assignable. Personal Property Law, § 41; Chambers v. Lancaster, 160 N. Y. 342, 54 N. E. 707. On delivery of the executed instruments, title passed to the executors for the use of the two legatees, and thereafter, so far as revocation or annulment are concerned, the title of the donees was as strongly entrenched as if the transaction had been one of sale. Pickslay v. Starr, 149 N. Y. 432, 44 N. E. 163, 32 L. R. A. 703, 52 Am. St. Rep. 740.

But the question remains: Did the instruments constitute valid gifts? So often have they been stated that it is unnecessary, except for the purpose of recalling them, to restate the essential ingredients of a valid gift inter vivos of personal property. They are: (1) A clear intention on the donor's part to make the gift in præsenti with some evidence of acceptance by the donee; and (2) complete and unconditional delivery. Delivery may be in accordance with the nature of the thing given (Gannon v. McGuire, 160 N. Y. 476, 481, 55 N. E. 7, 73 Am. St. Rep. 694), and hence actual or constructive (Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531), and may be to a third person as agent or trustee for the use of the donee (Bump v. Pratt, 84 Hun, 201, 32 N. Y. Supp. 538; Taylor v. Kelly, 5 Hun, 115).

If evidenced by a written instrument, the instrument must be delivered (Williams v. Guile, 117 N. Y. 343, 22 N. E. 1071, 6 L. R. A. 366); the essential thing being that the donor is divested of his title to and dominion, as owner, over the gift (Beaver v. Beaver, supra, 117 N. Y. 428, 429, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531). And a transfer may be sustained as a gift, although the form of a sale is adopted merely to give effect to the donor's intentions. Van Deusen v. Rowley, 8 N. Y. 358. Here the instruments express a consideration, but the intent to give is apparent from the entire situation as disclosed, and is expressly manifested by the words "desirous of carrying out the wishes of the testator," "for the purpose of rendering effective the legacies," and "for the purpose of enabling" the executors "to make such payment." On delivery of the instruments, title to and dominion over the interests, which were the subject of the gifts, passed from the donors to the executors by the words "I hereby assign, transfer and set over" to them "such amount of my share in said estate as will * * * be necessary for the payment of such legacies." The instruments expressed all of the essential elements of a transfer in trust for the benefit of the legatees. Brown v. Spohr, 180 N. Y. 201, 73 N. E. 14. The executors were not in the position of one to whom possession alone of the subject of the gift is given, with directions to deliver to the donee, for they took the legal title of which the donors were completely divested. Although, because of the nature and situa-

tion of the interests transferred, the donees might not have been able to immediately enter upon their enjoyment, the transfer thereof, for their benefit, was immediate. That the two instruments were delivered with intent that they should be at once effective can scarcely be disputed, and that such delivery was irrevocable seems to me is a necessary corollary from the facts.

For the reasons given, the judgment should be affirmed.

LAUGHLIN, J., concurs.