Matter of the Estate of CHARLES G. THOMPSON, Deceased.

(Surrogate's Court, New York County, August, 1921.)

Wills — executors and administrators — accounting — when legacy to sister vests in her surviving children — assignment of legacy to general guardian of infants.

A legacy of $100,000 was given to testator's sister with direction for its equal division among her surviving children in case of her prior decease. *Held*, that she having died before the testator the legacy vested in her two surviving children.

A like sum was bequeathed to a nephew provided he survived the testator, but the nephew having left two children him surviving the legacy fell into the residuary estate which was bequeathed to various charitable corporations. *Held*, that an absolute assignment of an amount equal to the legacy, which would have gone to said nephew had he survived the testator, executed and delivered by the children of testator's said sister to the general guardian of the children of the nephew, was valid as a gift, and irrevocable.

Where, therefore, more than a year after. the execution of the assignment and several months after the will had been admitted to probate following a contest upon objections filed by said general guardian and compromised by the payment of $133,000 from the residuary estate, the assignors, who are independently wealthy and who suffered no loss by the compromise of the will contest, seek to revoke the assignment on the ground that there was an agreement not to contest the will, but the evidence shows that no such condition was attached to the execution of the assignment, the decree upon the judicial settle-

Surrogate's Court, New York County, August, 1921.     [Vol. 116.

ment of the accounts of the executor will provide for the payment to the general guardian of said infants the amount called for by said assignment.

PROCEEDINGS upon the accounting of an executor relating to the validity of an assignment of a legacy.

Emmet, Marvin & Roosevelt, for executor.

Joseph Wood, for David Gardiner and Sarah Gardiner.

Joseph K. Savage, for New York Life Insurance and Trust Company as guardian, etc.

Joseph A. Shay, for Nora Loftus Gardiner.

Sidney Harris, special guardian.

FOLEY, S.   The question arising on this accounting is the validity of an assignment made by David Gardiner and his sister Sarah T. Gardiner of a legacy of $100,000.  By the first paragraph of his will, the testator bequeathed that amount to his sister, Sarah T. Gardiner (the mother of the assignors), provided she should survive him, but if she should not survive him, he directed that this legacy be divided equally among her children living at the time of his death.  The sister Sarah died prior to the testator and at the time of the latter's death, her children, David and Sarah, alone survived, and thereby, under the terms of the will, the legacy vested in them.  Their brother Robert had died just a few months before the testator, leaving the two infants in this proceeding, Robert and Alexandra.  By paragraph third, a similar sum is bequeathed to his nephew Robert, provided that he should survive the testator.  By reason of the death of Robert before the testator, this legacy to him fell

into the residuary estate.   When the will was read and it became known by the operation of its terms that neither Robert, nor his estate, nor the two infants, received anything, David and Sarah generously offered to give to the children the sum of $100,000, which would have gone to their father, Robert, had he survived.   This offer was expressed to Mr. Emmet, counsel for the executor, and he was requested to communicate it to the mother of the infants.   She immediately procured the services of Mr. Ten Eyck Wendell, an attorney, to carry out the expressed intention of David and Sarah.   He secured the appointment of Mrs. Gardiner as guardian of her children, drew the assignment of the legacy in issue here, and delivered it to the assignors for execution.   On December 30, 1919, the assignment was duly executed by them and was returned to Mr. Wendell.   At that time the infant Robert was eight years, and Alexandra nine years of age.   This document recites the terms of the will, sets forth the consideration as ten dollars and love and affection, and provides that the assignors " do hereby assign, transfer and set over unto Nora Loftus Gardiner as general guardian for said infants " the amount of the legacy.   The assignors requested that the paper be turned over to the executor.   Mr. Wendell, for reasons not material here, retained it until the 12th day of May, 1921, when an order was made in this court directing that it be filed and recorded.   Pers. Prop. Law, § 32.

No question appears to have arisen as to the validity of the instrument until February 17, 1921, over a year after its execution, and several months after the will was admitted to probate, when David Gardiner wrote to Mr. Wendell requesting that his sister and himself " be released from our obligation." The reason given by him was that he " believed " at

Surrogate's Court, New York County, August, 1921.    [Vol. 116.

the time of its execution that there would be no contest or compromise of the testator's will. It appears that the general guardian of the infants had in February, 1920, filed objections to the will, and that the contest was compromised by the payment of $133,000 for the infants. This settlement was made out of the residuary estate, which had been bequeathed to various charitable corporations. In their answer to this proceeding, the assignors ask that the assignment be declared null and void because there was no consideration for its execution, there was no delivery of the instrument, that it had been revoked, and finally that it was executed by mistake.

I hold that the assignment was in all respects valid and the sum of $100,000 should be paid to the general guardian of the infants. The answer of the assignors correctly describes the transaction as a " voluntary gift " and all the elements necessary to sustain its validity were present. Moreover the gift was complete, effectuated by a proper delivery and was irrevocable. *Pickslay* v. *Starr,* 149 N. Y. 432; *Haviland* v. *Willets,* 141 id. 35; *Bayley* v. *Bayley,* 141 App. Div. 243; *Platt* v. *Elias,* 186 N. Y. 374, 382. " It is a well-settled rule * * * that a voluntary transfer or delivery of personal property is a gift thereof and cannot be rescinded for want of consideration." *Doucet* v. *Mass. Bonding & Insur. Co.,* 180 N. Y. 589, 603. The assignment was valid, and constituted an absolute conveyance of the legacy. *Brown* v. *Spohr,* 180 N. Y. 201, 209; *McGuire* v. *Murphy,* 107 App. Div. 104; *Ridden* v. *Thrall,* 125 N. Y. 572; *Gray* v. *Barton,* 55 id. 68, 73; *Bedell* v. *Carll,* 33 id. 581. An unconditional legacy vests in the legatee as of the death of the testator and is then a subject of transfer. Jessup–Redfield, 1154.

The answer and the evidence before me confirm the

Misc.] Surrogate's Court, New York County, August, 1921.

validity of the assignment rather than destroy it. It is clear from the evidence that there was no mistake, either of fact or law, nor fraud nor concealment in its procurement. David Gardiner testified that the paper was executed freely " in good faith " and with the highest motives. The belated change of heart one year after its execution appears to have arisen from the favorable settlement of the probate contest made for the infants, or may perhaps have been caused by the troublesome meddling of the mother of the children as stated in David's letter of February 19, 1921. Neither of these reasons can be used to deprive the infants of their vested rights. The assignors are independently wealthy. They suffered no loss by the compromise of the contest. The special guardian and the attorneys had all been informed of the gift of the $100,000 to the children, and it had been taken into consideration by the representatives of the infants in the negotiations with the residuary legatees. Great injustice and hardship would therefore result to the infant donees, if the donors were permitted by a mere change of mind to secure the return of the subject of the gift. *Haviland* v. *Willets,* 141 N. Y. 35; *Pickslay* v. *Starr,* 149 id. 432.

Neither do I find in the evidence anything to sustain the contention of the assignors that there was an agreement not to contest the will. The evidence shows that no such condition was attached to the execution of the instrument. It is remotely possible that they might secretly have believed that no contest would be brought, but no such condition was expressed or attached to the transfer. The suggestion of a gift originated with them without inducement by any one representing the infants. This I find from the testimony of the assignor and from the letters of David Gardiner in evidence. He testified: " Q. Well now,

what fact or happening after that changed your mind with regard to this? A. When the beneficiaries under the will, the various institutions to which money had been given, consented to paying over to my brother's children the share he would have received under my uncle's will had he survived my uncle. * * * We did not expect a contest or a compromise, but when there was a compromise, when they got his share, sister and I thought then that we were entitled to what should come to us under my uncle's will, as that part, you know, of my mother's share." It is plain therefore that no condition was attached to the gift.

The facts of this case differ from those in *Orth* v. *Kaesche,* 165 App. Div. 513; affd., 222 N. Y. 612, where the assignment was procured by misstatements and false representation. The form of the assignment, there held revocable, was likewise different from that executed in favor of these infants. It was made to the executors in the form of an order for payment. Here the conveyance was absolute and made directly to the infants. The recent case of *Butler* v. *Sherwood,* 196 App. Div. 603, is an example of a conditional assignment, and the court in its opinion points out that if the assignment had been absolute, it would have operated to divest the assignor of the property and to have vested it in the assignee.

Let the decree provide for the payment, to the general guardian of the infants, of the sum of $100,000.

Decreed accordingly.