## CIRCUIT COURT OF BALTIMORE CITY.

Filed February 15, 1926.

CLAIRE J. ULRICH WHITEHURST
VS.
ANNA L. WHITEHURST TAYLOR.

*Edgar A. Martin, Randolph Barton, Jr., Wm. R. Semans* and *Wm. L. Marbury* for complainant.

*Vernon Cook* for defendant.

dant.

SOLTER, J.—

Very briefly, the facts in this case are that Mr. Charles E. Whitehurst, a resident of Baltimore City, died intestate, leaving a large estate. The complainant, Claire J. Ulrich Whitehurst, claiming to be his widow, brought this proceeding for the purpose of having declared void an instrument in writing by which she conveyed and quit-claimed any interest in his estate she may have had, to the defendant, the mother of the decedent. As the entire estate has been distributed to the defendant, the bill prays for a decree against her for one-half the estate thus distributed —less the sum of eleven thousand dollars paid complainant as the consideration for the assignment. The complainant charges fraud on the part of the defendant in procuring from her this assignment. She further asks the Court to judicially decree her marriage to Mr. Whitehurst to be valid. The defendant filed a general demurrer to the whole bill of complaint setting up four grounds.

### 1.

The first ground of demurrer invokes the equitable doctrine of restitution, by stating that the complainant does not offer to return the consideration for the assignment, which in the bill is set at eleven thousand dollars and in the demurrer at sixteen thousand dollars. The general rule relating to the right of rescission and cancellation of instruments procured by fraud, is that these rights are founded upon equitable principles and the injured party may not require the return of what has been obtained from him by deceit, until he has in turn restored, or offered to restore to the limit of possibility, what of value was received by him from the wrongdoer. This is the rule as stated in Steigler vs. Eureka Life Insurance Co., 146 Md., at page 643, with other cases therein cited. The exception to this rule of restitution is stated in Williston on Contracts, Sec. 1530, as follows: "And one who attempts to rescind a transaction on the ground of fraud, mistake or otherwise, is not bound to restore that which he has received by virtue thereof, when in any event he is entitled to retain it as indisputably his own no matter what may be the fate of his effort to rescind the transaction."

See also Pomeroy's Equitable Remedies, Vol. 2, Sec. 688, and cases cited.

In the case of Hall vs. Hall, 147 Md. 184, a family settlement was entered into between the widow of the decedent and certain members of the family. The widow having later discovered that her consent to the agreement which reduced her share from one-third to one-fifth had been procured by fraud sought to set aside. In the meanwhile she had received from the administrator "a check on account of the agreement." It was held that her right to rescind did not require that she should return the check as it could be accounted for by a credit upon her share of the estate. This case may be distinguishable from the present one upon this fact, which is, that the money she received was estate money to which she was undoubtedly entitled, but there is nevertheless underlying the decision the idea that it would be a vain and idle ceremony to return to the estate that which she would immediately receive together with a much larger sum. The reason for the rule of restitution is that if the plaintiff succeeds in his efforts to obtain a cancellation, and this would leave him with something which equitably belongs to the other person, that something must be paid or tendered as a prerequisite to his suit. In the case at bar, if the plaintiff succeeds in avoiding the assignment it still leaves the defendant with property nearly nine times in value belonging to the plaintiff. This is of course provided she is able to establish the validity of the marriage, a matter which will be later considered. Counsel for defendant relies strongly upon the case of Hite vs. Mercantile Trust Co., 156 Cal. 765. In that case there was an agreement between husband and wife by which the wife received a substantial sum

directly from him and released him from any interest in his property or his estate. This was later followed by a divorce between them. Upon the death of the husband, the former wife fild a bill against the administrators for two purposes, viz: avoiding the agreement and nullifying the divorce. As to the latter relief the Court held that the right to nullify a divorce was a personal action and died with the husband. As to the right to rescind the Court held that restitution would be a prerequisite. The reason for the application of this rule was that the Court held that she would not ipso facto be entitled to share as a widow. The Court said "The question would be merely reopened for further investigation of her marital status towards Hite, of the nature and amount of his estate, and the effect of his will which gives nothing to the plaintiff. *She may not succeed in obtaining any part of the estate even if she should succeed in the present suit."*

The bill sets up in minute detail the acts constituting the alleged marriage ceremony and to arrive at a just conclusion as to whether restitution is necessary or not an inescapable legal problem is offered as to whether this foreign marriage is so pleaded as to compel the admission by the demurrer that it is a valid and binding marriage. The marriage is pleaded in the following manner. It is alleged that the parties agreed to become married at a future date which was settled upon. Correspondence between them took place and subsequently a form of marriage ceremony took place, consisting of at least present agreements in the presence of a witness, the details of which are minutely set forth. It is further stated that following said marriage and as a result thereof cohabitation took place and the decedent introduced the complainant as his wife to some of their mutual friends. The marriage took place in the State of New York and the following allegation is made, viz: "That under the law then in force in the State of New York where said marriage was thus celebrated, both by their agreement and by the ceremony thus followed, the same was in all respects lawful, valid and binding and did constitute said parties husband and wife, as fully and completely as though performed or celebrated by a priest or by any civil officer or official, or by any other person or in any other manner."

As to whether the foreign law is sufficiently pleaded in this case is a question far from being free from difficulty. In the case of Furlong vs. German-American Press, 189 S. W. 385, Missouri, 1916, where the action was one of libel and the libel consisted of charging the plaintiff with kidnapping and the further allegation was made and plaintiff states that the crime of kidnapping in the State of California is a felony and punishable by imprisonment in States prison for a term of from one to ten years, the Court held on demurrer "no statute or other law of California or other State adopting the common law or directly making kidnapping an offense is properly pleaded. The bald allegation that kidnapping is a felony under California is insufficient."

In McLeod vs. Railroad Company, 58 Vt., which was a negligence case arising out of an accident in Quebec, a demurrer to the declaration was sustained. The Court said "It is essential that the foreign law from which the alleged duty springs should be so fully stated."

Both of these cases will be found referred to in a note in the Harvard Law Review, January issue, 1926, page 378.

In other decisions it is stated that foreign law thus pleaded is a pleading of fact and not a conclusion of law. Hanley vs. Donoghue, 116 U. S. 1; Edwards vs. Schillinger, 245 Ill. 231; Berney vs. Drexel, 33 Hun. 34. In Hanley vs. Donoghue, supra, which was an appeal to the Supreme Court from the Court of Appeals of Maryland, the Court said: "From these considerations it follows that the averment, in the third count of the declaration, that by the law of Pennsylvania, the judgment rendered in that State against Charles Donoghue and John Donoghue was valid and enforceable against Charles, who had been served with process in that State, and void against John, who had not been so served must be considered both in the Courts of Maryland, and in this Court on writ of error to one of those Courts, an allegation of facts admitted by the demurrer." In the case of Finney vs. Guy, 189 U. S. 335, cited by the defendant, the statutes and decisions relied upon by the complainant in that case were set out in full in the pleadings and a conclusion stated from these statutes and decisions. The Court held that the conclusion *from these statutes and deci-*

*sions* constituted a conclusion of law, not admitted by the demurrer and the Court was bound to determine from the pleading what was the proper effect to be given the law thus pleaded. It is true that in the present case no abstract principle of foreign law is pleaded, but where the facts are set forth as in this bill, they become equivalent in effect to a direct and specific allegation that a present agreement to become husband and wife, followed by cohabitation and a holding out, is a valid marriage under the laws of the State of New York and a statement of the abstract principle to this effect should not be necessary.

I, therefore, reach the conclusion that the demurrer admits the complainant to be the legal widow of Mr. Whitehurst and consequently this case is differentiated from the California case, *supra*, and further that there is no necessity for restitution of the money paid. As an amendment can easily be made clarifying this, any uncertainty as to the mode of pleading the foreign law, I take the liberty of suggesting it.

It has been urged that the allegation of a valid marriage is detracted from because it appears that throughout the entire bill the validity of the marriage has been in dispute between the parties. Especially is this claimed because one of the avowed purposes of the bill is to have the marriage declared in this very proceeding a valid marriage. It certainly must be admitted that this proceeding could not be maintained solely for the purpose of having a judicial determination of the validity of the marriage, if property rights were not involved. It would also follow that any finding of this Court as to the validity vel non of the marriage would not be a res adjudicata against persons not parties. A consequence therefrom is that the finding of the Court upon the question of the marriage is only an incident to the main purpose of the bill. It is similar to an allegation of title or ownership which may in a particular case be the foundation of an action, but the adjudication whereof binds no one but the parties and their privies. I, therefore, do not think that the validity of the marriage is shown to have been a matter of dispute between the parties, affects what I conceive to be the necessary admission of the demurrer, that the complainant is the widow of Mr. Whitehurst.

## 2.

The second point raised by the demurrer is that the bill is defective because of the failure to join the administrators of Mr. Whitehurst as necessary parties. This is upon the ground that if the allegations of the bill are correct, the bond of the administrators is liable. The further claim is made by the defendant that if she did receive the share of the widow wrongfully from the administrators she should be permitted to return it to the source from which it came and that if the distribution is erroneous or fraudulent as claimed the entire matter can be rectified only in a proceeding to which the administrators are parties.

The reply of the plaintiff is that the administration has been closed and no relief is asked from the administrators; that this proceeding is in its essence an accounting from the defendant of funds received by her by virtue of a fraudulent assignment, and a fraudulent administration account in the Orphans' Court.

The assignment at the time of its execution by the plaintiff was accepted in the following terms by the administrators of the estate:

"ACCEPTED FOR THE ESTATE OF CHARLES F. WHITEHURST by M. Morris Whitehurst administrator."

The administration account filed as part of the bill shows the distribution to the mother in the following manner:

"The decedent died intestate and unmarried: therefore distribution of the rest and residue of the estate is made to Anna L. Whitehurst mother of the decedent consisting of the following:"

It is evident that so far as the record discloses the assignment in controversy formed no part of the distribution and the mother received the entire estate under the claim of being the sole next-of-kin of the decedent. The final result of the allegations of the bill is that there was an improper distribution in the Orphans' Court by the administrators. Further these administrators of whom the defendant is one are definitely charged in the bill with being actual parties to the alleged fraud.

The question therefore is whether an administrator is a necessary party in a proceeding in equity by an alleged claimant of a distributive share against an actual distributee who has

by the latter's fraud and the fraud of the administrators received the entire net estate and in which suit it is claimed they should have shared equally; all debts of the decedent having been paid and the estate closed by the alleged fraudulent distribution.

There are several remedies available to one entitled to a distribution share who has been denied it. First he is at liberty to allow the procedure in Malkus vs. Richardson 124 Md. 224, by filing a petition for the correction of the administration account. Such a proceeding is directed against the administrator. He may, if he desires, sue the administrator upon his bond as in Shriver vs. Reister, 65 Md. 278. If the administrator has the funds and refuses to pay them over, the distributee may proceed in equity as was done in Garrison vs. Hill, 81 Md. 206. In Stockbridge vs. Smith, 39 Md. 640, where the estate was distributed under a noncupative will later set aside, it was held that the administrator later appointed could proceed both in the Orphans' Court and in a Court of Equity at the same time, and that the first administrator could not set up the equity proceeding in defense of the proceeding in the Orphans' Court to surcharge his account. If the administrator is fraudulently concealing assets the claimant has the right to proceed in equity to have the Court administer the estate, Boland vs. Ash, 145 Md. —. In all of these proceedings the administrator is obviously a necessary part because the immediate relief is directed against him.

In the case at bar equity jurisdiction attaches primarily because there is an outstanding assignment of the claimant's share which is alleged to be fraudulent, and while so outstanding is a bar to any of the aforementioned modes of relief. The purpose of the bill is to have the assignment vacated. The other purpose is to obtain a money decree against the defendant following the vacation of the assignment. The bill is in the nature of a suit to have the defendant who was a party to the fraud declared to hold the plaintiff's share of the estate in trust for her. In the case of Prince de Bearn, 111 Md. 434, which involved an erroneous distribution of the estate of the widow of Prince de Bearn, Judge Schumacher in the course of his opinion on page 477, said, "Without reviewing in detail the acts and conduct of the several participants in the erroneous distribution of the two-thirds trust fund we have come to the conclusion that taken together, they show that the parties, instead of resorting to a competent tribunal for direction, mutually relied upon mistaken advice and fell into a common error by means of which much valuable property belonging to the appellant was withheld from him and awarded to his children who had no right to it. The property is still in existence and within reach of the Court and it is but equitable that it should be restored to him." In Zollickofer vs. Seth, 44 Md. 359, it was held that a legatee holds the legacy as a trust fund for the benefit of a creditor of the decedent who has failed to file his claim in the Orphans' Court within the time necessary to hold the administrators for the payment of the same. This case was followed in Colonial Trust Co. vs. Fidelity Trust, 144 Md. 117. In the Prince de Bearn case supra it was held that the property in that particular case never passed to the executors, but was the property of Prince de Bearn under a power executed under a deed of trust, but the bonds constituting the property involved were decreed directly to the proper owner. It ought to be noted as the question of parties is the one directly under consideration that both the executors and trustees were made parties. The case of Myers vs. Safe Deposit and Trust Company, 73 Md. 413, throws only a slight slant upon this question. Distribution was made to a life tenant and it was held that when the administration account was passed the matter was entirely out of the Orphans' Court and further administration was not proper, but the remaindermen who claimed to be rightfully entitled should proceed in equity.

It will be seen that the aforegoing discussion is after all the mere ground work of a solution of the question, which involving as it does the matter of necessary parties in an equity proceeding must be decided by principles of equity procedure. In this case the assets have passed beyond the reach and control of the administrators. The title is outside of the administrators. No relief in the present suit is prayed against them. No defense upon the merits of the transaction is denied the defendant because the administrators have not been joined. Suppose they were made parties, what modification

of the relief prayed for could be decreed because of their presence in the proceeding? It is true that by being made parties the interesting question would arise as to whether the plaintiff would be silenced because of the statutory provisions regarding the competency of parties to testify as to transactions to which the decedent was a party, (see case note to Berger vs. Kirby, 51 L. R. A. [N. S.] 182), but so far as any modification or change in the relief being occasioned by their being made defendants, I have been referred to none by the defendant, nor have I been able to discover any. It is distinctly alleged in the bill that the defendant participated in the fraud alleged. It is true that in an action at law against one of several tort feasors, no defendant may complain because of the failure of to join other tort feasors.

In Bayley vs. Bayley, 126 N. Y. Supp. 102, it was held that an action to hold the administrator liable for wrongfully distributing assets of an estate is not inconsistent with the recovery of such assets or their value from the distributee. It would certainly seem that the converse of this proposition would be correct.

It seems to me that this case should be distinguished from that line of cases in which it is held that if the estate is incompletely administered or if there is the possibility of a reverter of the assets to the estate, the administrator is a necessary party. Such cases are Gavin vs. Carlin, 55 Md. 530; Baltimore Retort Co. vs. Mali, 65 Md. 93, and cases cited in notes thereto. In Miller's Equity, par. 41, the rule is stated that whenever the personal assets of a deceased person may be affected by the decree, the executor or administrator should be a party. But in this case, as before stated, the purpose of the bill is to have the defendant declared to hold the property, alleged to have been fraudulently distributed, as a trust fund for the complainant, and the only theory upon which I could find it necessary to hold the administrators are necessary parties would be that the complainant has not as one of the next of kin, title to any part of the decedent's estate except it should pass directly from the administrators, and that therefore she would not be entitled as against the alleged fraudulent distributee to a decree. The conclusion that I reach, however, is that if the allegations of the bill of complaint be conceded to be true, the defendant holds the plaintiff's distributive share in trust for her and the administrators are not necessary parties.

3.

The third point raised by the demurrer is that the bill fails to disclose "where, how and by what means or under what circumstances the defendant or her attorney received any knowledge of the frauds charged in the bill."

The numerous acts of fraud set out in the bill of complaint are levelled by the complainant at her own attorney and one of her associates. Leaving aside certain alleged representations of the Whitehurst attorney Jones to the complainant as to the effect of the instrument in question, no specific acts of fraud are charged to the defendant. Ordinarily when the person who perpetrates the fraud is not the defendant himself, such defendant is held by a charge that the active person was his agent. It happens, however, that in the instant case the active person was the complainant's own lawyer and of course, her agent.

My own conclusion is that, while the complainant ought not to be required to set forth the circumstances demanded in this ground of demurrer, as they are obviously, if they exist at all, facts to which the complainant cannot have access, she should, nevertheless, take the responsibility of charging an agency or a conspiracy to which the defendant was a direct party, or the defendant should be excused from any imputed notice of or responsibility for the alleged frauds.

It is however, unnecessary to decide this question further than the above comment, because it is definitely charged in the bill that "said Brown was in fact, *unknown to the complainant*," paid by said defendant and the said administrators acting through their agents, M. Morris Whitehurst and the said Jones, the sum of five thousand dollars for his services. *It further charges that the defendant had knowledge of such concealment.* This accusation of surreptitious dealings between the defendant and the complainant's agent which for the purposes of the demurrer must be conceded as truthful is sufficient to hold the bill under the decision in DeCrette vs. Mohler, 147 Md. 108. If it is true as alleged in the bill that Brown the New York attorney

of the complainant, without her knowledge, was also in the pay of the defendant, the assignment is voidable at the option of the complainant.

4.

The fourth ground alleged in support of the demurrer is laches on the part of the complainant, and further that she "is attempting by indirect means to attack an auditor's account properly stated in the Orphans' Court of Baltimore City many months before the filing of the bill and long after the time permitted by law for any attack on such an account."

I have previously decided that this is the proper Court for a suit of this character. Letters of administration were granted upon the estate of Mr. Whitehurst on February 7th, 1924. The assignment in question was not executed until eleven months later, on January 9th, 1925. The administration account was passed on January 30th, 1925, and this bill was not filed in this case until October 17, 1925, not quite ten months later. The complainant sets forth in her bill the reasons for her delay, and under the circumstances of the case, it does not seem to be she can be charged with unreasonable delay. See Malkus vs. Richardson, 124 Md. 224.

For the aforegoing reasons an order will be signed overruling the demurrer.